## WILD v. SOVEREIGN CAMP, W. O. W.
### No. 1222.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1933.

Kemp & Buck, of Amite, for appellant.

Ellis, Ellis & Ellis, of Amite, for appellee.

LE BLANC, Judge.

Plaintiff brought this suit to recover as beneficiary, under a certificate issued to John David Wild, Jr., by the defendant fraternal beneficiary association.

The certificate provided for a payment of $1,000 in the event of the death of the insured, and it contained a rider, attached, providing for double indemnity in the event death resulted from bodily injury effected solely through external, violent, and accidental means and within sixty days after sustaining such injury.

Claiming that the insured was accidentally killed on November 28, 1931, while the policy of insurance was in full force and effect, plaintiff seeks to recover the double indemnity provided for under the rider referred to.

It appears that the insured died of a gunshot wound, the discharge from a .22 caliber rifle which he had been seen handling just a few minutes before.

Reading the certificate under which the claim is made, we find that the articles of incorporation, the constitution, laws and by-laws of the association in force at the time and all amendments to each, together with the application for membership, the medical examination and the certificate itself, shall constitute the agreement between the assured and the association. The certificate was issued June 23, 1930. Referring to the constitution, laws, and by-laws of the Sovereign Camp of the Woodmen of the World, in force at the time this certificate was issued, under paragraph 10 of section 57, we note a provision to the effect that the association shall not be liable for the payment of double indemnity under any beneficiary certificate providing for such indemnity in case of death by accidental means including that by the discharge of firearms, unless the fact of such

death by any such means was accidental shall be established by the testimony of at least one person other than the member, who was an eyewitness to the discharge of the firearm or shooting.

Contending that plaintiff's petition failed to allege that there was an eyewitness to the shooting in this case, the defendant filed an exception of no cause of action to that part of the demand for double indemnity. Upon the exception being overruled in the lower court, answer was filed under reservation. The defense to the demand as a whole is that the insured committed suicide, and that, under the provisions and specific terms of the certificate, the defendant is thereby relieved from all payment, and, secondly, that as to the claim for double indemnity same cannot be allowed, as there was no eyewitness to the actual shooting which caused his death. From a judgment rejecting both of these defenses and decreeing payments of the claim in full as prayed for, the defendant has appealed.

In this court, the exception of no cause of action is again stressed, and we are asked to review the ruling of the lower court thereon. It seems to us, however, to be strictly a matter of defense and of proof that is presented under it, and we therefore hold that it was properly overruled.

A defense of suicide in an action on an insurance policy being a special defense, the burden of proof rests on the insurer to sustain it with sufficient legal certainty. "When circumstantial evidence, only, is relied on, the defense fails, unless the circumstances exclude, with reasonable certainty, any hypothesis of death by accident, or by the act of another." Leman v. Manhattan Life Ins., Co., 46 La. Ann. 1189, 15 So. 388, 24 L. R. A. 589, 49 Am. St. Rep. 348. Also Valesi v. Mutual Life Insurance Co., 151 La. 405, 91 So. 818. The record in this case is void of any direct testimony that the insured died from a self-inflicted gun shot wound. The only circumstantial evidence lies in the fact that he died as a result of such a wound from a .22 caliber rifle, and that he had been seen with that kind· of rifle in his hands a few minutes before the shot was fired. Counsel for defendant have worked a theory of suicide around a remark the deceased is said to have made before the shot was heard. The testimony shows that the deceased was working on a dredge boat below Raceland in the parish of Lafourche. His duties kept him around and near a drum on which was wound and rewound the cable which operated the boom. On the evening he was shot, he had in his hands this rifle which caused his death. It is not absolutely clear, but we understand from the testimony of a witness named Warren Breaux that he had been cleaning the rifle while seated on a bench near the drum.

The remark used by counsel to support their theory was made to Breaux, who quotes the deceased as having said: "You all will hear about me in a few days." He had just prior to that time showed the rifle after cleaning it and how it worked. Breaux does not know what he meant by that remark. If it be considered in the light of counsel's theory as indicating a design of self-destruction, there is, on the other hand, testimony by the same witness to the effect that the deceased also spoke at the same time about a dance he was going to attend the following week, which in the nature of things tended to show anything but an intention to commit suicide at that moment. Moreover, Breaux speaks of him as being at the time in his ordinary good humor, laughing and joking.

The deceased was a young man nineteen years old, earning good wages at the time, and contributing to the support of his. father and mother. There is nothing to indicate that he was morose or of a melancholy disposition. On the contrary, he is said to have been happy, had lots to live for, and on the very day that he was killed had gone to Raceland and made purchases of clothes and other objects which he seemed pleased to show to the people on the dredge boat.

No motive for suicide has been suggested, and the legal presumption in cases of this character is against self-destruction. Outside of the strained circumstances arising out of the remark the deceased is reported to have made to the witness Breaux, there is nothing whatever in the record to rebut that presumption. We find that the lower court properly rejected the defense of suicide.

The provision in the constitution and by-laws of the defendant corporation requiring the testimony of an eyewitness in cases of accidental killing is attacked by the plaintiff on the ground that it is in contravention of prohibitory law. It is urged that, if the Legislature is prohibited from enacting any law changing the rules of evidence in any judicial proceeding or injury before the court, under our state Constitution, certainly no individual or private corporation can do so. We find that similar provisions regulating the manner of proof in cases like this have frequently been questioned in other jurisdictions, on the ground that they are against public policy, and as a rule they are held to be valid. If we adopt the construction that is generally placed on the term "eyewitness" as contemplated under such a provision, however, it will be unnecessary for us to pass on the question of its validity in this case, as to all intents and purposes the witness Warren Breaux was an eyewitness to the shooting as he was held to be by the district judge. In an annotation in Ruling Case Law,

vol. 5. Permanent Supplement, p. 3799, par. 441, we find that: "The provisions as to proof by an eye-witness does not require that the witness must have seen the actual discharge of the firearm. It comprehends the presence of the witness at or near the scene, and his direct observation of such facts and circumstances connected with the immediate transaction, as of themselves, and without any aid from the presumption or inference arising from love of life or the instincts of self-preservation, indicate that the killing was accidental."

The following is given as an illustration from one of the decisions cited: "It has been held that the wife of one killed by the accidental discharge of a gun lying on the shelf of a garage in which he is at work is an eye-witness of the accident where he left the house attired for work on his car to go to the garage and returned within three or four minutes seeking help and stating that he had been hurt."

As another example we might refer to the Massachusetts case of Lewis v. Brotherhood Accident Co., 194 Mass. 1, 79 N. E. 802, 17 L. R. A. (N. S.) 714, where it was held that the facts and circumstances of a drowning accident are sufficiently established by eyewitnesses, within the meaning of an accident insurance policy limiting the amount of recovery in case they are not so established, where witnesses testify to having seen deceased in a canoe, within three or four minutes of the accident, and to having seen the overturned canoe and evidence of its having recently capsized, within a few minutes after it, although they did not see the craft overturn.

We believe that the interpretation as given above is a fair and reasonable one, and certainly if the testimony as appears from the facts reported in the two illustrations given was held sufficient to constitute the witness an eyewitness as coming within the requirements of the provisions of the policy, certainly the witness Breaux in this case can be similarly regarded. He was immediately at the scene of the accident at the very moment that it happened. He had been talking to the deceased and had seen him handling and cleaning the rifle just at the time. He turned around to attend to some of his duties and heard the discharge of the rifle. He then turned around again and saw the deceased lying on the floor, about ten feet from him, shot in the temple with a .22 caliber ball. The facts and circumstances are much stronger than they appear to have been in the cases referred to, and under the construction of the term as laid down we are fully justified in holding this witness as an eyewitness within the contemplation and meaning of the provision of the policy.

The judgment appealed from correctly allowed the double indemnity as claimed.

Judgment affirmed.