FOX v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, etc.

No. 13727.

United States Court of Appeals
Fifth Circuit.

Dec. 7, 1951.

Rehearing Denied Jan. 14, 1952.

Rives, Circuit Judge, dissented.

**HOLMES, Circuit Judge.**

This action was brought by appellant, the wife of insured, against appellee, a fraternal benefit society, upon a certificate of insurance on the life of her husband, who came to his death from a gun-shot wound while he was sitting in a chair in the living room of their home. At his feet were the gun, tackle box, and a fishing lure with four hooks on it, which he had assembled in preparation for a fishing trip.

It was on the morning of June 9, 1950, between 5:30 and 6:00 o'clock, that the insured came to his death. He and his wife had spent the night at their home, and the night before had planned to go fishing. All the doors inside the house were open, and the parties, though in adjoining rooms, were in constant conversation until a minute or two before the shot was fired. As appellant was walking through the bed room, in the direction of the living room, she heard a shot, at the sound of which she made a lunge to get into the living room, which was not more than three feet away. As she did, the puppy ran out of the living room and hit her feet. She caught the door to keep from falling, and went right on into the living room. Her husband, still alive, was sitting in a chair; the two fishing rods were lying against the window, and one of the reels was off the rod on the table by the insured's chair. Later the insured was removed to a hospital, where he was seen by a physician. Appellant went to the hospital to which insured was removed, and about thirty-five minutes later he died. Nothing was said by him from the time of the shot until he died.

■■ The question presented on this appeal is whether the trial court erred in setting aside the jury's verdict and entering judgment for appellee, notwithstanding the verdict. This depends upon the proper interpretation of the provision limiting liability of the insurer to $500 if the death of a member results from the accidental discharge of a firearm where there is no eyewitness to the discharge except the member himself. A literal interpretation of this provision might lead to absurd

Alto V. Lee, III, Huey D. McInish, Dothan, Ala., for appellant.

Oscar L. Tompkins, Dothan, Ala., for appellee.

Before HOLMES, STRUM, and RIVES, Circuit Judges.

results. A person might be in the same room with an insured without noticing what he was doing and without seeing the discharge of the gun, or might be asleep in the same room and awakened by the report of a pistol. A witness may testify to what he hears, feels, tastes, and smells, as well as to what he sees, and regardless of whether he sees anything. Ordinarily one hears but does not see the discharge of a gun, especially if smokeless powder is used or if the muzzle of the gun is in close contact with an object. The meaning of the term eyewitness, therefore, has been given a liberal interpretation by the courts. It includes any competent witness who was present at the scene of the accident at the time of its occurrence. In Ellis, Adm'r v. Interstate Business Men's Accident Ass'n, 183 Iowa 1279, 168 N.W. 212, L.R.A.1918F, 414, syllabus 4 is as follows: "The wife of one killed by the accidental discharge of a gun lying on the shelf of a garage in which he was at work is an eyewitness of the accident within the meaning of a clause in an accident insurance policy, where he left the house attired for work on his car, to go to the garage and returned within three or four minutes seeking help, and stating that he had been hurt."

 The appellant and her husband had slept together in their home. They had arisen early to go fishing, and he was assembling his gun and fishing tackle. She heard the shot, and sprang to his assistance through the open door three feet away. She was with him when he died at the hospital on the same day. She was a competent witness to the discharge of the gun, to the circumstances surrounding him at that time, and to the operating cause of his death. If one hears a gun fire and sees the wounded man fall, the former is an eyewitness to the discharge, though no fire, smoke, or bullet, was seen to issue from the gun. We conclude that the appellant was an eyewitness to the discharge of the gun within the meaning of the policy provision. Wertheimer v. Travelers' Protective Ass'n, 10 Cir., 64 F.2d 435; Wigginton v. Order of United Commercial Travelers, 7 Cir., 126 F.2d 659; Wild v. Sovereign Camp W.O.W., La.App., 149 So. 906, 907; Villemarette v. Sovereign Camp W.O.W., La.App., 178 So. 648, 651; Anderson v. Commonwealth, 291 Ky. 727, 166 S.W.2d 30, 36. We have considered the case of Werner v. Travelers' Protective Ass'n, 5 Cir., 37 F.2d 96, and think there is sufficient factual difference between that case and this one to distinguish them.

The judgment appealed from is reversed, and the cause remanded to the district court with directions to reinstate the verdict and enter judgment in accordance therewith.

Reversed.

RIVES, Circuit Judge (dissenting).

The law of this case in my judgment cannot be better stated than in the opinion of the learned District Judge reported in 97 F.Supp. 987.

I would add only a few remarks to those so ably expressed by Judge Kennamer. In my opinion this case should be controlled by the Alabama law as found in the case of Woodmen of the World Life Ins. Soc. v. Braden, 242 Ala. 606, 7 So.2d 311. In that case Mr. Justice Bouldin of the Alabama Supreme Court cited the case of Werner v. Travelers' Protective Association, 5 Cir., 37 F.2d 96, from this Court, and quoted at length from the opinion of Judge Walker in the Werner case. The opinion of Judge Hutcheson as the District Judge in that case is reported in 31 F.2d 803.

The cases of Order of United Commercial Travelers v. Knorr, 10 Cir., 112 F.2d 679, and Wigginton v. Order of United Commercial Travelers, 7 Cir., 126 F.2d 659, involved the same insurer as this, but the by law provision involved in each of those cases was significantly different from that here involved. The provision then read as follows: "Nor shall the Order be liable for any death benefit when the member dies as the result of injuries sustained as a result of a gunshot wound or the alleged accidental discharge of firearms where there is no eye-witness except the member himself, in an amount greater than Five Hundred Dollars ($500.00)."

That by law provision now has added after "eye-witness" the following: "to

such discharge." Circuit Judge Minton, now Mr. Justice Minton of the Supreme Court, wrote the opinion in the Wigginton case, and, as one of the grounds of decision, held that it was reasonable to construe the quoted provision as it then existed to mean that there shall be an "eye-witness" to the "dying" instead of to the "shooting", and that since a witness arrived before the insured died, the requirements of the policy were met.

It certainly is true that "eye-witness" requirements, when reasonably subject to more than one construction, should be construed liberally in favor of the insured. I cannot, however, escape the conclusion that the addition of the words "to such discharge" after the term "eye-witness" removed the ambiguity in the meaning of the provision that bedeviled the Wigginton case.

At first thought "eye-witness" would appear to be a term of clear meaning easily understood. Actually it has proved deceptively indefinite and doubtless will continue to be a source of trouble to the courts. The cases which have arisen or can arise are of infinite variety. The fatal shot may have been fired from ambush or from a distance. There may have been a clear eye-witness who escaped or cannot be produced. A person actually within eye range of the deceased may not have been looking, or may have been blind, or even so deaf as not to have heard the discharge of the gun, or unconscious from sleep, drink, or insanity, or an infant and incapable of being a witness of any kind. The insurer might conceivably argue for the impossible construction that the witness must have seen the bullet emerge from the gun and travel upon its course. Difficulty of precise definition cannot justify courts in denying to contracting parties the right to use terms of their own choice or excuse courts from a duty to arrive at a common sense rather than a fanciful meaning for such terms.

Mr. Justice Bouldin for the Alabama Supreme Court in Woodmen of the World Life Ins. Soc. v. Braden, supra [242 Ala. 606, 7 So.2d 313], defined eye-witness as follows: "An eye-witness is one who sees the actual shooting in such manner that he forms a fair judgment upon whether the gunshot was accidental or intentional."

This court in Werner v. Travelers Protective Association, supra, said in effect that an eye-witness must be one within ocular view of the happening. If we abandon that test and say that a person even three feet out of eye-range of the insured is nevertheless an eye-witness where shall we stop? Shall we go as far as the shot can be heard? Cases of difficulty or those leading to absurd results must be met as they arise. It does not seem to me that this is such a case. I have read many cases including all that my brothers have suggested but I have not been able to attain to the vantage of their viewpoint. With my limited vision, I feel that I have no more right to bring imagination to the support of sympathy and thereby in effect to strike out the requirement of an "eye-witness to such discharge" than I would have boldly to change the amount of a $500.00 policy to $5,000.00. I therefore respectfully dissent.