STATE of Maine

v.

Sanford S. LINDSEY.

Supreme Judicial Court of Maine.

April 18, 1979.

Michael E. Povich, Dist. Atty., Bronson Platner (orally), Asst. Dist. Atty., Ellsworth, for plaintiff.

Stephen D. Foster (orally), Ellsworth for defendant.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

Following a jury verdict in the Superior Court in Hancock County on September 13,

1978, the Defendant, Sanford S. Lindsey, was convicted on three counts of burglary (17–A M.R.S.A. § 401). The Defendant appeals from the judgment of conviction, raising two issues in this Court. He asserts that (1) the presiding justice erred in refusing to grant a mistrial at his request when two jurors indicated to the court that they recognized one of the State's witnesses after he had testified and (2) the evidence was insufficient to support the verdicts.

We sustain the appeal in part, concluding that the evidence was insufficient to support a conviction on one of the three counts of burglary.

On the shore of Graham Lake, in Ellsworth, were four camps owned, respectively, by Sheldon Richardson, Timothy Manning, Eugene A. Flowers and, his son, Eugene R. Flowers. The senior Flowers kept watch over his neighbors' camp during their absences from the lake.

On September 20, 1977, Eugene A. Flowers observed that a break had been made into the camp of Sheldon Richardson. He promptly notified the Ellsworth Police, who came, inspected the damage and checked the other adjacent camps. Richardson's camp then was boarded up and secured.

Two days later Flowers observed two persons at the Richardson camp, beating against the door of the shed next to the principal building. Flowers quickly left to notify again the Ellsworth Police. Upon his return he discovered that breaks had been made, not only into the Richardson camp but also into the camps of Timothy Manning and Eugene R. Flowers.

The police responded quickly to Flowers' report. On arriving at the lake, Officer Ernest Fitch went directly to the Richardson camp. Finding it deserted, however, he moved off in the direction of the Manning camp. On his way there he discovered the Defendant and Edward Bodge walking within six or seven feet of the Manning camp and between the house and a tool shed. He ordered the pair to halt.

Officer Fitch testified that the Defendant was carrying two rectangular objects, one of which proved to be a torch kit. Edward Bodge, he said, was carrying a green knapsack which contained various household items. The officer stated that after a careful recital to the Defendant of the constitutional rights of an accused (which rights the Defendant waived), the Defendant declared, "So what? We have been into every camp up here, but who doesn't break into camps?"

A search of Bodge by the officer disclosed a drill box and a screwdriver with a broken red plastic handle. Pieces of this handle were later found at the camp of Sheldon Richardson. The items in the green knapsack, as well as the torch kit and drill box, were identified by their owners as coming variously from the Manning and Richardson camps. Breaks had been made into both of these camps. The lock on the camp of Eugene R. Flowers had been broken; however, no property from this camp was recovered in the possession of the Defendant or in the possession of Bodge.

When the Defendant took the stand, he contradicted much of this officer's testimony. He declared his own innocence, testifying that he was walking near these camps while going from his house trailer to his truck, which had broken down not far away. He said the knapsack had been found on the side of the road shortly before Officer Fitch saw them. He stoutly denied making the statement attributed to him by that officer. He also denied carrying any boxes. Finally, the Defendant described the loss from his truck of a CB radio, chain saw and tool box on that same day, implicitly suggesting the presence in the area of other potential camp burglars.

We now address the first issue raised by the Defendant on appeal.

During the afternoon of the first day of the trial two jurors, who during their *voir dire* examination earlier had not recognized the name of Timothy Manning, sent notes to the presiding justice, each stating that when Manning testified, he had recognized him. One juror knew Manning by sight but had never formally met him. The other had been in college with this witness about

thirteen years earlier. Both jurors stated this recognition of a witness would not affect their ability to return a fair verdict. The Defendant, nevertheless, promptly moved for a mistrial and further requested an opportunity to question Manning about his acquaintance with these two jurors. Both requests were denied.

The Defendant asserts that a refusal to grant a mistrial, when at this juncture two jurors recognized one of the State's witnesses, constituted prejudicial error.

Such a motion for a mistrial is addressed to the sound discretion of the presiding justice.

> But such a motion should be granted only when taking all the circumstances into consideration there is an urgent, manifest and imperious necessity mandating a mistrial in the furtherance of justice.

*State v. Gagne*, Me., 349 A.2d 193, 198 (1975); *see also State v. Hachey*, Me., 278 A.2d 397, 403 (1971). Under this standard we find no error in the denial of a mistrial here.

 In the case before us neither juror indicated any substantial or recent relationship with the witness and both professed continuing impartiality. The Defendant did not at this point in the trial request an *in camera* questioning of these jurors by the presiding justice to determine their impartiality; instead, the Defendant requested an examination of the witness, Timothy Manning. The presiding justice refused such an examination, finding that his testimony would not shed any light on the state of mind of the two jurors, and concluding that it was too remote and attenuated in its connection to that question. While such an examination might have developed the nature of the relationship between the witness and these two jurors, we find no abuse of discretion in its exclusion by application of M.R.Evid. 403. *See Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375, 377–78 (1971). In light of the jurors' failure to recognize the witness's name at the initial *voir dire* examination, it was within the court's discretion to conclude that examination of Manning would have produced only undue delay and would have been a waste of time.[1]

 Moving on to his second issue, the Defendant challenges the sufficiency of the evidence to support the verdict. He takes nothing by raising this issue with reference to the verdicts on Counts I and II, charging burglaries, respectively, of the Manning and Richardson camps. It was within the province of the jury to determine which testimony was to be believed and to make reasonable inferences from the facts thus proved with reference to those burglaries.

 As to Count III, alleging burglary by the Defendant of the camp of Eugene R. Flowers, the evidence was sparse. The record before us does not disclose that the Defendant was ever seen at this camp, nor is there evidence that any property missing from this camp was found in the possession of either the Defendant or Edward Bodge. The only evidence linking the crimes is evidence of the breaking of this camp's lock contemporaneously with the intrusion into the Manning and Richardson camps.[2] The record is barren of any evidence that this camp had been entered at or about the time the lock was broken.

 Upon the record before us we cannot conclude that there was credible evidence from which the jury would be justified in concluding beyond a reasonable doubt that the Defendant was guilty of the offense charged. *See State v. Gove*, Me., 379 A.2d

---

1. We suggest, that better practice would have been to permit an *in camera* examination of the witness. Such an examination might have been illuminating on the relationship between the witnesses and this juror and could have been accomplished without upsetting the other jurors on the panel. *Cf. State v. Mullen*, 528 S.W.2d 517, 521 (Mo.App.1975).

2. With reference to Count III, the Defendant's admission that he had been "into every camp up here" was not properly admissible evidence, since the *corpus delicti* of this offense was not adequately proven by independent evidence. *Cf. State v. Atkinson*, Me., 325 A.2d 44, 45–46 (1974). Entry was an element of the offense, yet no independent evidence of entry was presented to the jury.

152, 153 (1977); *cf. State v. Carter*, Me., 391 A.2d 344, 347 (1978).[3]

The entry will be:

Appeal sustained in part and denied in part.

Judgment affirmed as to Counts I and II and set aside as to Count III.

Remanded with direction to enter a judgment of acquittal on Count III and for resentencing.

WERNICK, J., did not sit.

---

**3.** In directing, as we must, the entry of a judgment of acquittal on Count III, resentencing becomes necessary because the judgment of conviction imposed a single sentence for the three counts. For judicial economy in processing appeals, and to facilitate review of sentences by the Appellate Division of this Court, we strongly recommend that in the judgment of conviction the sentence be separately and specifically stated as to each count upon which the Defendant was found guilty. *See* 3 H. Glassman, *Maine Practice* § 32.9 (1967); *United States v. Moynagh*, 566 F.2d 799, 805 (1st Cir. 1977); *cert. den.* 435 U.S. 917, 98 S.Ct. 1475, 55 L.Ed.2d 510 (1978).