### STATE of Maine

v.

### Lowell THOMAS.

Supreme Judicial Court of Maine.

Argued March 17, 1981.

Decided July 16, 1981.

---

Charles K. Leadbetter (orally), Asst. Atty. Gen., David Crook, Dist. Atty., Augusta, for plaintiff.

Lipman, Parks, Livingston, Lipman & Katz, Robert J. Katz (orally), John Parks, Augusta, for defendant.

Before McKUSICK, C. J., GODFREY, NICHOLS, GLASSMAN * and CARTER, JJ., and DUFRESNE, A. R. J.

* GLASSMAN, J., sat at oral argument and participated in the initial conference, but died before this opinion was adopted.

McKUSICK, Chief Justice.

Defendant Lowell Thomas appeals from his convictions by a Superior Court (Kennebec County) jury on two separate indictments, tried together, for receiving stolen property, 17–A M.R.S.A. § 359(1) (Supp. 1980). Each of the indictments alleged that defendant, knowing the items to have been stolen or believing they had probably been stolen, had received, retained, or disposed of the property of another: in one instance, two shotguns, and in the other, a "spiking hammer." Defendant contends on appeal that he should be given a new trial because 1) one of the jurors who sat in the case erroneously answered a question on the jury questionnaire completed by her prior to trial, 2) the presiding justice erroneously admitted in evidence a tape recording of a conversation involving two police informants, defendant, and an undercover police officer, and 3) the justice's instructions to the jury incorrectly explained the statutory definition of the offense with which defendant was charged. We find error only in the jury instruction, but further conclude that error did not detract from the fundamental fairness of defendant's trial on the indictment relating to the spiking hammer. We accordingly vacate only his conviction on the indictment involving the two shotguns.

I.

In completing the jury questionaire provided for by 14 M.R.S.A. § 1254 (1980),[1] the person who eventually served as foreman of the jury at defendant's trial responded in the negative to the following inquiry:

22. Have you, or any member of your immediate family, ever served in any law enforcement capacity?

In fact, as brought out after trial, the juror's husband had, for a brief time in 1953–54, served by gubernatorial appointment as interim county attorney in Kennebec County. On a timely motion for a new trial in

1. The prospective juror completed her questionnaire on July 31, 1978; trial in the case took place nearly six months later, on January 25, 1979.

the Superior Court, defendant claimed that he would have exercised one of the peremptory challenges available to him under M.R. Crim.P. 24(c) against that juror had he known of her husband's former tenure as county attorney, and asserted that the tendency of the erroneous answer to mislead him hampered him in an intelligent exercise of his peremptories. The presiding justice denied the motion for new trial. On appeal we conclude that in making that ruling the justice did not abuse the discretion vested in him. *See State v. Harding*, Me., 408 A.2d 1003, 1006 (1979).

There is no suggestion whatever that the juror acted knowingly in giving the erroneous answer. On the contrary, a lay person, even the wife of a long-time practicing lawyer, might well understand "law enforcement" as a reference to police functions only and not to work of a part-time attorney for the county. Also, the questionnaire's wording may not have clearly directed the prospective juror's attention to her husband's part-time public office of more than a quarter century earlier. Although by 14 M.R.S.A. § 1254 attorneys have a right to inspect jury questionnaires in the clerk's office, they must accept the information there provided with all its inherent shortcomings. Jury questionnaires are not a part of the voir dire, and an erroneous response cannot be elevated in consequence to the equivalent of a false answer to a question of court or counsel in the jury selection process at trial.

Even if defendant would otherwise have chosen to challenge peremptorily the juror who gave the erroneous response, he is not for that reason alone entitled to a new trial. The right to exercise peremptory challenges has never itself been accorded constitutional status, *Swain v. Alabama*, 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965); rather, it exists solely by statute or rule to provide further assurance that an accused receives a trial by an impartial jury, *see Stilson v. United States*, 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154 (1919); H. Glassman, *Rules of Criminal Procedure with Commentaries* § 24.4 at

183 (1967); *see also United States v. Alessandrello*, 637 F.2d 131, 141–42 (3d Cir. 1980). Absent any independent demonstration that the presence on the jury of a person whose husband had served as county attorney many years in the past deprived him of an impartial tribunal, defendant will not be heard to assert that he should for that reason be given a new trial. Maine has neither a statutory disability nor any court-made *per se* rule disqualifying law enforcement officers as jurors and *a fortiori* has none for the wife of a lawyer who served briefly in law enforcement in the early 1950s. *See State v. Chattley*, Me., 390 A.2d 472, 477 (1978). Thus, even had the full facts been known, the inquiry would be solely one of checking for actual bias. The presiding justice's questioning of the prospective jurors was careful and comprehensive; it "created a reasonable assurance that prejudice would be discovered if present," *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976).

Finally, the presiding justice properly denied a new trial for a further reason. By a principle comparable to that applied to new trial motions for newly discovered evidence, *see State v. Estes*, Me., 418 A.2d 1108, 1114 (1980), a new trial will not be granted because of an erroneous answer on the jury questionnaire when the party could with due diligence have ascertained the true fact. *Cf. State v. Chattley, supra* at 477 (waiver, by failing to apprise court of facts re juror qualifications that party could with due diligence have discovered). Particularly is this true in the case at bar where the prospective juror's husband was an active practicing lawyer in the city of Augusta where defendant's trial was being held and his prior service as county attorney in the same county was a matter of public record.

Under all the circumstances before him, the presiding justice in denying the motion for new trial reached a rational conclusion that fell well within the permissible range of a trial judge's discretion.

## II.

Defendant next claims that the presiding justice erred in admitting in evidence a three-minute segment of a tape recording made by the undercover police officer who purchased the stolen item from defendant. The recording covered the entire conversation that took place while the transactions were being effected over a period of some one hour and a half; but only the short segment relating to the spiking hammer was offered by the State.

On his direct examination, the officer testified that on April 24, 1978, he had gone to the Clinton home of two persons who, after being caught dealing in stolen property, were cooperating with the police. There, the officer and the two informants met defendant, and the officer purchased from defendant the spiking hammer and the two guns involved in the case at bar. The officer testified that defendant admitted that the spiking hammer had been stolen from the Maine Central Railroad and did not cost him anything and that the guns were "hot" and had been taken from the Winslow area. Defendant later stated that he had found the spiking hammer in the Winslow town dump and had bought the guns at a lawn sale in Waterville, that in the sales transaction he had responded affirmatively to the officer's questions whether the goods were stolen in order to get a better price.

After the defense rested its case in chief and the court took a five-minute recess, the State called the undercover officer back to the stand in rebuttal. The officer stated that he had made a tape recording of the April 24 conversation, that that tape was then in court, that he had reviewed the entire hour and a half conversation prior to testifying in the State's case in chief, and that during the recess held just prior to his retaking the stand, he had listened again to the portion of the taped conversation relating to the spiking hammer transaction. Over defendant's objection, the justice permitted the officer to repeat his earlier testimony that defendant had told him he knew the spiking hammer had been stolen by a third party. The officer then said that he

had that specific statement on tape. Over defense counsel's objection, the justice admitted the three-minute portion that corroborated the officer's testimony relating to his conversation with defendant about the spiking hammer.

On appeal, defendant renews his contentions, made at trial, that the portion of the tape recording that was played for the jury was not authenticated and that the statements contained therein were either inadmissible hearsay or admissible, if at all, only for impeachment purposes.

■■■ With respect to the authentication claim, M.R.Evid. 901(a) provides that:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Rule 901(b)(1) illustrates the general provision of subdivision (a) of the rule by listing as one permissible type of authentication the "[t]estimony of a witness with knowledge that a matter is what it is claimed to be." Evidence based on knowledge obtained from any one of the five physical senses, including the aural sense, may be admitted in the proper circumstances. *See Fox v. Order of United Commercial Travelers of America*, 192 F.2d 844, 846 (5th Cir. 1951); 5 J. Weinstein & M. Berger, *Evidence* ¶ 901(b)(1)[01] at 901–21 (1978); R. Field & P. Murray, *Maine Evidence* § 901.2 at 248 (1976). In the case at bar, the undercover officer testified that he had participated in the conversation about the spiking hammer, that he had operated the recording device by which it was reproduced on tape, that he had recently listened to the tape recording, and that the conversation was reproduced on the recording. He also identified specifically all speakers participating in that conversation. A sufficient foundation is laid for the admission of a tape recording if any witness is able to testify, on the basis of his having heard in person the conversation that is recorded on the tape, that the tape fairly and accurately reproduces that conversation and if the witness is further able

to identify the participants in the conversation. *See* McCormick, *Evidence* § 214 at 534 (2d ed. 1972). Such an authentication of a conversation in which the authenticating witness participated is similar to the authentication of a photograph by a witness with personal knowledge that the photograph is an accurate representation of what it purports to show, *see State v. Sargent,* Me., 361 A.2d 248, 251 (1976). We are not in the case at bar dealing with the quite distinct problems involved in authenticating the fruits of electronic surveillance. Authentication of a tape recording produced as the result of electronic surveillance may well require a more particularized and formal showing by the authenticating witness that the sounds on that recording accurately represent the conversation that took place. *See United States v. Biggins,* 551 F.2d 64 (5th Cir. 1977). In the instant case, we decide only that the undercover officer's testimony, concerning a conversation in which he had participated, was sufficient to permit the presiding justice to exercise the discretion plainly vested in him by the broad wording of M.R.Evid. 901(a) in admitting the tape recording in evidence. *See also* M.R.Evid. 104(b).

■ We also reject defendant's contention that the tape should have been excluded because it consisted solely of inadmissible hearsay. Although the portion of the tape that was played for the jury clearly contained out-of-court statements offered for the truth of the matter asserted, they were all admissible as defendant's own admissions. M.R.Evid. 801(d)(2). As such, those statements were not hearsay at all; they were admissible not only to impeach defendant's credibility, but as substantive evidence as well. *See* R. Field & P. Murray, *supra,* § 801.5 at 193. There is nothing in the record to suggest that the State offered those statements for impeachment only, or indeed for any purpose other than their full substantive content. The presiding justice did not err in admitting in evidence the three-minute segment of the tape recording made by the undercover officer

and relating exclusively to the spiking hammer transaction.

## III.

■ As his final point on appeal, defendant contends that the presiding justice erroneously instructed the jury with respect to the elements of 17–A M.R.S.A. § 359, the statute defining the offense of receiving stolen property. Since defendant failed to raise this contention at trial, we review it only to determine whether the alleged error manifestly deprived defendant of a fair trial. *See* M.R.Crim.P. 52(b); *State v. Doucette,* Me., 398 A.2d 36, 39 (1978).

Section 359(1) provides that:

A person is guilty of theft, if he receives, retains or disposes of the property of another knowing that it has been stolen, or believing that it has probably been stolen, with the intention to deprive the owner thereof.

On several occasions during his charge to the jury, the justice stated that the jury could find defendant guilty of the crimes charged if they found, among other things, that defendant had reason to believe, "or probably believed," that the items alleged in the indictments were stolen.[2] That instruction was wrong, since under it the jury could have thought it was open to them to convict defendant on a lesser standard of guilt than beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *State v. John W.,* Me., 418 A.2d 1097, 1100 (1980). Moreover, although the justice later during his charge read the language of the statute itself, that without more did not cure the harm done by the erroneous instruction, because the earlier mistake was never pointed out and specifically rectified.

With respect to the indictment concerning the spiking hammer, we conclude that the erroneous charge worked no manifest injustice upon defendant. Even had the justice given only the proper charge, namely, that defendant was guilty if he knew

---

**2.** The prosecutor also made the same error during his opening statement to the jury. There is no suggestion that he did so other than inadvertently.

that the spiking hammer had been stolen or believed it had probably been stolen, we are persuaded beyond a reasonable doubt that the jury's verdict would have been unaffected. In the portion of the tape recording of the conversation during which the spiking hammer transaction occurred, defendant by his own admission established that he knew that item was stolen. Defendant's own words cemented the officer's earlier testimony to the same effect, and that testimony and the tape together rendered incredible defendant's story at trial that he had found the spiking hammer at the Winslow town dump. An error in the instruction that beyond a reasonable doubt did not affect the jury's verdict does not detract from the fundamental fairness of defendant's trial. *Cf. State v. Smith*, Me., 394 A.2d 259, 263 (1978) (erroneous instruction was harmless, even where saved by timely objection, where the correct instruction "could not possibly have brought about a not guilty verdict").

As to the indictment involving the two guns, however, we cannot say that the erroneous charge made no difference in the outcome of defendant's trial. On that indictment, the jury did not have any taped recording of a comparable extrajudicial admission by defendant that the guns were stolen. They heard only the officer's testimony that defendant had told him the guns were "hot" and had been taken from the Winslow area and defendant's contradictory testimony that he had purchased the guns at a Waterville lawn sale. Without more, those conflicting statements presented the jury with an issue of credibility; and we cannot determine beyond a reasonable doubt that the jury would not have resolved that issue differently had they had the benefit of a consistently proper reading of the applicable legal standard.

The entry must be:

Appeal sustained in part and denied in part.

Judgment of the Superior Court in CR–78–498 is vacated, and the case is remanded to the Superior Court for further proceeding consistent with the opinion herein.

Judgment of the Superior Court in CR–78–499 is affirmed.

All concurring.