438 A.2d 256 (1981)
STATE of Maine
v.
S.*** G.***.
Supreme Judicial Court of Maine.
Argued September 10, 1981.
Decided December 17, 1981.
*257 Janet Mills, Dist. Atty., Neria R. Douglass, Asst. Dist. Atty. (orally), Auburn, for plaintiff.
Samp & Stone, Alan G. Stone (orally), Auburn, Frederick S. Samp, Fales & Fales, Stephen B. Wade, Lewiston, for defendant.
Before McKUSICK, C. J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.
GODFREY, Justice.
S.*** G.*** was adjudicated under the Maine Juvenile Code, 15 M.R.S.A. pt. 6 (1980-81 Supp.), of having committed the offense of burglary, 17-A M.R.S.A. § 401 (Supp.1980).[1] The adjudication and disposition were affirmed on appeal to the Superior Court. The juvenile filed a timely appeal to the Law Court, arguing that the State failed to adduce sufficient evidence to prove beyond a reasonable doubt the necessary element of intent included in the crime of burglary. We reverse the judgment of the Superior Court and remand for entry of *258 an order of dismissal of the petition pursuant to 15 M.R.S.A. § 3310(4) (1980).
On June 26, 1980, Lewiston police responded at 9:50 p. m. to a "silent alarm" from the warehouse of B. Peck Company, a retail corporation. The alarm had been set up the previous day near a stack of air conditioners. Two officers entered the building by unlocking a door. They turned on the lights, identified themselves and called for anyone in the building to come out. No one appeared. They soon found four males, two adults and two juveniles, at the top of the stairs leading to the second floor. A pane of glass about eighteen-by-twelve inches was missing from a window ten feet from the rear door; there was no broken glass or other evidence of forcible entry.
S.*** G.*** was charged with burglary, a Class C crime, in that he "did enter a structure . . . knowing that he was not licensed or privileged to do so and with the intent to commit theft therein." It is the evidence of "intent to commit theft" which is at issue in this appeal. The actual intent to commit a specific crime in the building at the time of unauthorized entry is an essential element of burglary as defined in 17-A M.R.S.A. § 401. State v. Field, Me., 379 A.2d 393 (1977).
In juvenile proceedings, "[n]ormal adult criminal procedures must be afforded to the extent consistent with the basic rehabilitative purposes of the juvenile justice system." State v. Gleason, Me., 404 A.2d 573, 580 (1979). Application of that rule requires use of the adult standard of review in this case. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). That standard was clearly stated in State v. Dyer, Me., 371 A.2d 1086, 1089 (1977):
In a non-jury case, the test of the sufficiency of the evidence rests upon the determination whether, in view of all the testimony, there was believable evidence from which a single justice, as the factfinder, was warranted in believing beyond a reasonable doubt that the defendant was guilty.
When the intended crime included in the burglary charge is theft, the State must prove both the intent to obtain or exercise control over property of another and the intent to deprive the other thereof permanently or in some substantial way. State v. Williams, Me., 387 A.2d 27, 29 (1978). Circumstantial evidence may be sufficient, of course, to prove the intent. State v. Latronica, Me., 391 A.2d 363 (1978). The evidence of intent presented by the State in this case was entirely circumstantial.
The evidence in this case must support a rational inference of the facts from which the juvenile court could be convinced beyond a reasonable doubt that S.*** G.*** entered the warehouse with both types of intent required under the statute. State v. Mann, Me., 361 A.2d 897, 906 (1976). Here, the evidence presented by the State tended to show the following facts: the juvenile was one of four males found in the warehouse, which was separate from the retail store; a silent alarm placed near a stack of air conditioners on the first floor had been triggered; the juvenile was found on the stairs leading to the second floor; one pane of glass was missing from a closed window ten feet from the door at the rear of the warehouse; the officers entered by unlocking a door; the building "housed a lot of merchandise."
We have upheld convictions under 17-A M.R.S.A. § 401 where the necessary intent was found as a result of an inference drawn from circumstantial evidence. E. g., State v. Mower, Me., 407 A.2d 729 (1979); State v. Lindsey, Me., 400 A.2d 368 (1979); State v. Boyer, Me., 392 A.2d 41 (1978); State v. Harding, Me., 392 A.2d 538 (1978); State v. Williams, Me., 387 A.2d 27 (1978). But see State v. Roper, Me., 418 A.2d 1093 (1980).
In each of those cases the State presented evidence from which the finder of fact could draw a rational inference that the defendant intended beyond a reasonable doubt to commit a crime at the time he entered the structure in question. In the instant case, the State has not provided *259 sufficient evidence of such intent.[2] There was no testimony that the defendant had entered through the open window pane or that the window itself had been unlocked; the witnesses, including the assistant manager of the Peck store, were unable to state when the window pane had been removed. There was no indication that any other entrance was unlocked. There was no testimony as to the size or weight of the air conditioners or of their position or that of the alarm relative to the broken window. There was no evidence of any disturbance of any items inside the warehouse, other than the triggering of the nearby alarm. No evidence of any car, truck or other means of conveyance was provided. No property was moved or removed. There was no evidence that the defendant had broken into the premises. There was no indication that any tools capable of breaking a window cleanly were found at the scene or in the juvenile's possession.
Even if the triggering of the alarm near the air conditioners could somehow give rise to a rational inference of intent to exercise control over them by the person who triggered the alarm, and if a rational inference could be drawn that this person was S.*** G.***, the evidence presented does not support the further inference of intent to deprive the owner of the air conditioners.
Since the evidence presented by the State in this case was insufficient to support a finding of the essential element of intent to commit theft necessary to support a juvenile adjudication that S.*** G.*** was guilty of burglary, the juvenile court should have ordered the petition dismissed and the juvenile discharged under 15 M.R.S.A. § 3310(4).
The entry is:
Appeal sustained.
Judgment reversed.
Remanded to the Superior Court for remand to the juvenile court with instructions to dismiss the juvenile petition.
NICHOLS, ROBERTS, CARTER and VIOLETTE, JJ., concurring.
ROBERTS, J., with whom CARTER, J., joins, concurring in separate opinion.
McKUSICK, C. J., and WATHEN, J., dissenting.
ROBERTS, Justice, with whom CARTER, Justice, joins, concurring.
I join in the majority opinion. I wish to express separately, however, my view of the nature of the problem we confront in this case. To me, this case symbolizes the disparate manner in which juvenile cases are prosecuted despite the teachings of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
Mere suspicion of a bad purpose would not here support any conviction beyond criminal trespass. No prosecutor would present to a jury an adult case so totally devoid of circumstances relating to the intent to commit a specific crime inside the structure. 17-A M.R.S.A. § 401(1). No judge would accept a plea of guilty from an adult defendant without some inquiry into the specific crime the defendant intended to commit. Yet here we have an example of a prosecutor so casual in his presentation of the juvenile offense of burglary that we are left to speculate whether the juvenile's purpose was theft, arson, vandalism, surreptitious use of drugs, or aberrant sexual conduct.
Common sense suggests that the juvenile was up to no good and probably intended to steal something. I do not believe, however, that the evidence of intent in this case meets the test of proof beyond a reasonable doubt. In re Winship, supra.
McKUSICK, Chief Justice, and WATHEN, Justice, dissenting.
We would affirm the judgment below. The case presented by the State before the District Court judge was not a model of *260 completeness and clarity to be emulated in the prosecution of either adult or juvenile cases. Nonetheless, we as appellate judges cannot say that on the evidence in this record no rational factfinder could conclude beyond a reasonable doubt that the juvenile had entered the department store warehouse with the intent to commit theft therein. Within the constraints of appellate review, therefore, we do not believe the judgment below should be reversed for insufficiency of evidence on the intent issue. See State v. Lagasse, Me., 410 A.2d 537, 542 (1980).
In the case at bar the police found the juvenile, Shawn G., along with three other males, two adults and one juvenile, hiding in the nighttime in the warehouse of a general department store, Peck's of Lewiston. Because of the nature of the store and its warehouse, it was a reasonable inference, both for the entering quartet and for a factfinder, that once inside the department store warehouse the intruders would have access to a whole range of valuable, readily asportable consumer goods. That inference was so obvious that apparently it never occurred to either the prosecutor or the juvenile court judge that express evidence as to the contents of the department store warehouse was necessary. A factfinder may rationally infer, though he of course is not required to do so, that a person who at nighttime entered without authority a bank vault, a jewelry store, or similar place containing valuables that are easily carried away, and who on approach of the police flees or hides, entered for the purpose of theft. See State v. Boyer, Me., 392 A.2d 41 (1978) (store); State v. Maples, Me., 343 A.2d 583 (1975) (gun shop); State v. York, Me., 324 A.2d 758 (1974) (restaurant). While the three Maine cases just cited involved defendants caught trying to break into places where asportable valuables were located, it would be anomalous if the intent to steal on the part of this juvenile and his associates was any less inferable because they had gone further in carrying out their intent before the police found them hiding within the place containing asportable valuables. See also Commonwealth v. Lewis, 276 P.Super. 451, 419 A.2d 544, 547 (1980) ("exceedingly strong inference of an intent to commit theft" arises from the facts that the building entered (a church) "was highly likely to contain articles of value which could be taken without the use of special tools," that the entry was in the nighttime, and that on discovery by the police the defendant fled). In numerous appellate decisions from other jurisdictions, factfinders have been upheld in basing their inference of an intent to steal upon the fact of an unlawful entry or attempted entry into a structure containing articles of value if no other purpose appears from the fact circumstances. See, e. g., Parrish v. State, 141 Ga.App. 631, 234 S.E.2d 174 (1977) (grocery warehouse); People v. Semma, 19 Ill.App.3d 776, 312 N.E.2d 746, 747 (1974) (house); State v. Clay, 213 N.W.2d 473 (Iowa 1973) (hardware store); People v. Bonner, 49 Mich.App. 153, 211 N.W.2d 542, 544 (1973) (business office containing adding machines, etc.); State v. Lawrence, 566 S.W.2d 243, 246-47 (Mo.App.1978) (apartment); Price v. State, 589 S.W.2d 929, 932 n. 1 (Tenn.Cr.App.1979) (beauty shop).
In our judgment the evidence in this case was adequate to support a rational conclusion that beyond a reasonable doubt the juvenile and his three companions entered the department store warehouse with the intent to steal.
NOTES
[1] § 401. Burglary

1. A person is guilty of burglary if he enters or surreptitiously remains in a structure, knowing that he is not licensed or privileged to do so, with the intent to commit a crime therein.
[2] The State did not charge S.*** G.*** with criminal trespass, 17-A M.R.S.A. § 402 (1980 Supp.), an offense that the evidence might have supported.