2008 ME 189

**STATE of Maine**

v.

**Patsy A. ROLLINS.**

Supreme Judicial Court of Maine.

Argued:  Oct. 28, 2008.

Decided:  Dec. 18, 2008.

Arnold Clark, Esq. (orally), Jabar, Batten & Ringer, Waterville, ME, for Patsy Rollins.

Evert Fowle, District Attorney, James G. Mitchell, Asst. Dist. Atty. (orally), Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] Patsy A. Rollins appeals from a judgment of conviction of thirty-one counts of aggravated forgery (Class B), 17–A M.R.S. § 702(1)(D) (2007), entered following a jury trial in the Superior Court (Kennebec, *Studstrup, J.*). Rollins contends, inter alia, that the court abused its discretion when it denied her motion for a mistrial after three jurors revealed that they were acquainted with or were related to different State witnesses. She argues

that the court infringed upon her right to an impartial jury, to challenge the jurors for cause, and to peremptorily strike the jurors from the jury pool.[1] We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] Rollins worked for the Town of Manchester as the tax collector. In August of 2000, several Manchester taxpayers had liens placed on their property, without notice, for failure to pay property taxes. Shortly thereafter, thirty-one signed United States Postal Service return receipts, none of which had postmarks, were found in and removed from the Town's records as suspected forgeries.

[¶ 3] On September 12, 2003, Rollins was indicted on thirty-one counts of aggravated forgery of the return receipts. A jury trial was held from August 20 through August 22, 2007. Jury selection resulted in a jury of twelve jurors plus two alternate jurors. The court dismissed one juror prior to trial due to a medical issue. The trial proceeded with the thirteen remaining jurors.

[¶ 4] During trial, when the State called its third witness, a juror notified the court that he knew the witness. The court conducted an inquiry of the juror outside of the jury's presence. The juror told the court that he works with the witness in a department of State government, but that they worked in different bureaus. The two men do not work in the same building, and the juror sees the witness only at department gatherings once or twice a year. The juror is not the witness's personal friend, the two do not socialize outside of work, and neither man reports to the other within the department. The juror answered "no" when the court asked him whether "anything that [the witness] is testifying about ... would[ ] be of influence to your or his relationship."

[¶ 5] Rollins objected to the juror remaining on the jury. The court overruled the objection stating that it "did not get the feeling that that very limited contact between the juror and the witness would have any effect on [the juror's] ability to sit as a juror." Rollins's attorney then pointed out that he was unable to peremptorily challenge the juror, *see* M.R.Crim. P. 24(c), or to challenge him for cause at the time of empaneling, *see* M.R.Crim. P. 24(b).

[¶ 6] Before the State called any additional witnesses, the court was informed that a different juror was a distant relative of another State witness. The juror testified at sidebar that she may have seen the witness at family funerals one or two times, but that she would not recognize the witness by sight. Although the juror told the court that being related to the witness would not affect her role as a juror, the court dismissed her, stating that it had "more concern about this particular juror than ... about the one before." The court stated: "I hate to lose both alternates so quickly, or two jurors out of fourteen so quickly, because if we lose anymore—." The court did not finish this thought. De-

---

1. We are unpersuaded by Rollins's additional contention that she was denied a fair trial when the court allowed the jury to begin deliberating near the end of the day with instructions that the jurors would have to return in the morning if they did not reach a verdict. *See State v. Chapman,* 358 A.2d 387, 389–90 & n. 2 (Me.1976); *cf. State v. Hodgkins,* 238 A.2d 41, 42 (Me.1968); *State v.* *Hale,* 157 Me. 361, 172 A.2d 631, 633 (1961). We are also unpersuaded by her argument that the evidence was insufficient to support two of the thirty-one convictions. *State v. Barnard,* 2001 ME 80, ¶ 11, 772 A.2d 852, 857; *State v. Brown,* 1998 ME 129, ¶ 9, 712 A.2d 513, 516; *State v. Wallace,* 431 A.2d 613, 615–16 (Me.1981).

spite the court's ruling, Rollins's attorney again argued that he had been unable to peremptorily challenge the juror.

[¶ 7] Shortly thereafter, the court was informed that yet another juror knew another State witness, who was a good friend of the juror's former girlfriend. The juror had not seen the witness for one and one-half years, and had stopped seeing the witness on a regular basis two and one-half years earlier. At one point, the juror had socialized with the witness once every couple of months. When the court asked him whether his familiarity with the witness would affect his ability to render a fair and impartial verdict, the juror answered: "I don't believe so."

[¶ 8] Rollins moved to dismiss the juror and declare a mistrial. The court allowed the juror to remain on the jury, reasoning that his knowledge of the witness, particularly given the amount of time that had passed since the juror had been in contact with the witness, and his response that he did not think his relationship with the witness would affect his ability, sufficiently insured the juror's impartiality. The court then stated that "we are starting to get some cumulative effect here." The jury found Rollins guilty on all thirty-one counts of aggravated forgery. Rollins filed this appeal.

## II. DISCUSSION

[¶ 9] Rollins contends that the court erred in denying her motion for mistrial because her right to an impartial jury, to challenge jurors for cause, and to peremptorily strike jurors from the jury pool, were infringed. We review the denial of a motion for mistrial for an abuse of discretion. *State v. Bridges*, 2004 ME 102, ¶ 10, 854 A.2d 855, 858.

A. Right to an Impartial Jury

[¶ 10] Rollins contends that the court's concern about having to declare a mistrial for lack of sufficient jurors clouded its judgment when it found that a juror who was socially acquainted with a witness could be impartial, and when it allowed that juror to remain on the jury.

[¶ 11] We review questions of juror impartiality for clear error. *State v. Libby*, 485 A.2d 627, 630 (Me.1984). A trial court's determination that "the juror remained impartial will stand unless it is clear to this court that no competent evidence supports that decision." *Id.* at 629. The court's determination "is accorded substantial deference because of the [court's] ability to observe the juror and assess credibility." *State v. DePhilippo*, 628 A.2d 1057, 1059 (Me.1993) (quotation marks omitted).

[¶ 12] A defendant is entitled to a fair trial by a disinterested jury, "each member of which is free from bias and prejudice." *Libby*, 485 A.2d at 629. When a juror's impartiality is questioned, the court should interview the juror to determine whether it is satisfied with "the juror's ability to set aside whatever impressions or opinions [the juror] had of the witness and to participate in reaching a verdict based on the evidence and the law." *Id.*; *see also DePhilippo*, 628 A.2d at 1059. The fact that a juror assures the court that the juror could remain impartial is significant in this determination. *See State v. Dyer*, 2007 ME 118, ¶ 15, 930 A.2d 1040, 1043–44.

[¶ 13] The record supports the court's finding that the last juror to come forward could be impartial, despite his familiarity with one of the State's witnesses. When the juror's knowledge of the witness was brought to the court's attention, the court properly questioned the juror about

his relationship with the witness. In attacking the impartiality of the juror, Rollins relies on the juror's answer to the court's question as to whether his familiarity with the witness would affect his ability to render a fair and impartial verdict, which Rollins contends was "a less-than-emphatic, 'I don't believe so.'" The trial court, however, was in the best position to view the juror's demeanor and to determine not only *what* the juror said, but *how* the juror said it. We will not disturb the court's finding unless there is no support for that finding in the record. We have upheld a court's determination that a juror was impartial based on a similar answer given by the juror. *See State v. Chattley,* 390 A.2d 472, 477 (Me.1978) (holding that the trial court did not err in finding impartial the wife of a police officer who stated "[n]o, I don't believe I would" in response to the court's question as to whether she would give more weight to an officer's testimony due to her connection to law enforcement).

[¶ 14] Furthermore, although the court expressed concern about the possibility of a mistrial, there is nothing in the record suggesting that this concern affected its determination of impartiality, particularly when the witness stated that he thought he could remain impartial. Accordingly, Rollins's right to an impartial jury was not violated.

### B. Challenges for Cause

[¶ 15] Rollins further argues that because three jurors disclosed that they knew different witnesses after the jury

empanelment, her right to challenge the jurors for cause was infringed. *See* M.R.Crim. P. 24(b).

[¶ 16] To help ensure the right to a fair and impartial jury, 15 M.R.S. § 1259 (2007)[2] provides that each party is entitled to use challenges for cause during jury empanelment. *See Libby,* 485 A.2d at 629 & n. 3. When considering whether to grant a party's challenge for cause, "[t]he determination of existence of prejudice is for the trial court to make." *State v. Thibeault,* 390 A.2d 1095, 1099–1100 (Me. 1978).

[¶ 17] The court did not deny Rollins's right to challenge the jurors for cause. Even though Rollins was unable to challenge the jurors who came forward after the trial began, once the court was made aware of the jurors' knowledge of the witnesses, it conducted a proper inquiry into their potential partiality. The court properly concluded that two of the jurors were impartial, and that one should be dismissed. There is nothing to suggest that the court would have come to a different conclusion had Rollins challenged the jurors during jury selection.

### C. Peremptory Challenges

[¶ 18] Rollins also argues that because the three jurors disclosed information about their connection with a State witness only after the jury was empanelled, she lost her opportunity to use her peremptory challenges to strike the jurors from the jury pool. *See* M.R.Crim. P. 24(c).

---

2. Title 15 M.R.S. § 1259 (2007) provides that challenges for cause in criminal cases shall be allowed as they are in civil cases. The relevant civil statute provides:

> The court, on motion of either party in an action, may examine, on oath, any person called as a juror therein, whether he is related to either party, has given or formed

an opinion or is sensible of any bias, prejudice or particular interest in the cause. If it appears from his answers or from any competent evidence that he does not stand indifferent in the cause, another juror shall be called and placed in his stead.

14 M.R.S. § 1301 (2007).

[¶ 19] We review the supervision of peremptory challenges for an abuse of discretion. *See State v. Crocker,* 435 A.2d 58, 71 (Me.1981); *cf. State v. Lowry,* 2003 ME 38, ¶ 7, 819 A.2d 331, 333 (applying the abuse of discretion standard to challenges to the court's conduct during voir dire, which includes the use of peremptory challenges). "Peremptory challenges allow the parties the option, within limits, of striking from the jury prospective jurors whom the parties consider to be potentially hostile or unsympathetic to their cause." *State v. McLean,* 2002 ME 171, ¶ 11, 815 A.2d 799, 803 (quotation marks omitted). The right of peremptory challenge is not a constitutional right, but rather a "substantial right" based on statute. *Id.* ¶¶ 10, 13, 815 A.2d at 802, 804 (quotation marks omitted); *see also State v. Thomas,* 432 A.2d 757, 760 (Me.1981)

[¶ 20] A missed opportunity to exercise a peremptory challenge does not by itself give a party the right to a new trial. *See Thomas,* 432 A.2d at 760. There is no per se rule mandating the exclusion of a juror based on alleged bias or partiality. Rather, the test for determining whether a missed opportunity to use a peremptory challenge warrants a new trial is whether, when all the facts are known, actual bias or partiality is shown. *See id.*

[¶ 21] The court did not abuse its discretion in allowing two of the three jurors who came forward after the start of trial to remain on the jury, despite Rollins's inability to exercise her peremptory challenges against the jurors during empanelment. We cannot say that any juror who is or was in the past socially acquainted with a witness cannot be impartial. *See State v. Lindsey,* 400 A.2d 368, 370 (Me.1979). Nor must a juror who works for the same company as a trial witness be deemed impartial. *See State v. Robards,* 623 A.2d 168, 169 (Me.1993). Proper inquiry must be made as to each juror to determine whether that juror can be partial. In this case, the court concluded that both of the jurors who were not dismissed could be unbiased. That finding is supported in the record, and Rollins's right to exercise her peremptory challenges was not violated.

[¶ 22] Because there was no interference with Rollins's right to an impartial jury, her right to exercise her challenges for cause, or her peremptory challenges, the court acted within its discretion in denying her motion for mistrial.

The entry is:

Judgment affirmed.