**STATE of Maine**

v.

**Glenn PELLETIER.**

Supreme Judicial Court of Maine.

Argued May 23, 1991.
Decided July 30, 1991.

---

Janet Mills, Dist. Atty., Craig Turner (orally), Asst. Dist. Atty., Auburn, for plaintiff.

Orrin J. Brown (orally), Bath, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS, and BRODY, JJ.

McKUSICK, Chief Justice.

Defendant Glenn Pelletier appeals from his conviction of gross sexual misconduct, 17–A M.R.S.A. § 253 (Class A) (Supp. 1987),[1] following a jury trial in the Superior Court (Androscoggin County, *Fritzsche, J.*). Defendant's sole contention on appeal is that the court should have granted his request for a mistrial because of the prosecutor's conduct, during defense counsel's cross-examination of the victim, of handing counsel a brown paper bag containing a black negligee that the State had failed to produce pursuant to a discovery request. We agree that defendant's right to a fair trial was violated and vacate the conviction.

On May 22, 1989, defendant was indicted by an Androscoggin County grand jury. At trial the following September, the victim testified that on an evening in mid-November 1988, after she returned to her Auburn apartment from a shopping trip with a friend, she noticed a piece of paper underneath her front door. The victim opened the door to defendant, whom she had known from social activities at the Lewiston–Auburn Deaf Club, and invited defendant inside. The two talked for a while, but when the victim refused defendant's request that she have sex with him, defendant grabbed at her, forced her to put on a black negligee that he had brought with him in a brown bag, held her down on a couch, and penetrated her. When the victim reported the assault to the police a few days later, she turned the negligee over to them. Defendant, on the other hand, testified that he and the victim had consensual intercourse on that night in November, as they had on previous occasions. He testified that the victim left the kitchen for her bedroom after the two had been talking and returned to the kitchen wearing the black negligee, and that the two then had sexual intercourse.

After the State failed to produce the negligee during informal discovery, defendant filed a motion for discovery. The negligee was not produced until the first day of trial, when the prosecutor handed a brown paper bag containing the negligee to defense counsel during defense counsel's cross-examination of the victim. On handing the bag to the defense attorney, the prosecutor asked to approach the bench. The prosecutor showed the presiding justice the negligee in the bag and told him that the police had always had the negligee but had been unable until the morning of trial to find it. The defense counsel objected to the late production of the negligee and the justice reserved his ruling. On resumption of the trial after a ten-minute break, the defense attorney continued his cross-examination of the victim without further reference to the negligee.

The next morning, at a conference in the presiding justice's chambers, the defense attorney moved for a mistrial. The prosecutor acknowledged that he should have produced the negligee on defendant's discovery request, but stated that he was unaware until the morning of the trial that the police had the garment. The presiding

---

1. Section 253 has since been repealed by P.L.1989, ch. 401, Part A, § 4, which created the offense of "gross sexual assault."

justice denied defendant's request for a mistrial and refused to instruct the jury to ignore the brown paper bag from the previous day. As a sanction for the State's failure to turn the evidence over to defendant, however, the presiding justice refused to allow the State to introduce the negligee in evidence. The defense attorney later elected to introduce the negligee in connection with defendant's own testimony.

By failing to produce the black negligee in response to defendant's discovery request, the State left itself open to the trial court's discretion whether to impose sanctions. Under M.R.Crim.P. 16(d), "[t]he court has broad discretion ... to resolve discovery violations." *State v. Flick*, 577 A.2d 1192, 1194 (Me.1990). In order to establish that the court here abused that discretion by denying his motion for a mistrial, defendant must establish that he was prejudiced by the discovery violation and "that the prejudice rose to the level of depriving him of a fair trial." *State v. Cook*, 581 A.2d 415, 417 (Me.1990). Had the State's only error been its failure to produce the requested negligee, the court's remedy would not have been inappropriate. By prohibiting the State from using the negligee and giving defendant the option of introducing it, the court could have eliminated any prejudice resulting from the State's failure to provide defendant with advance notice that it possessed the negligee. The availability of the black negligee as an exhibit was not crucial to the sole issue raised at trial, whether the victim had consented to have sexual intercourse with defendant. *Compare State v. Thurlow*, 414 A.2d 1241, 1244 (Me.1980) (mistrial necessary when a police report withheld by the State, which included defendant's false statements, was material to establish intent). Moreover, defendant can claim no reversible prejudice from the negligee itself, which the jury had not seen before he himself introduced it as part of his own defense.

In this case, however, the prejudice to defendant resulted not from the last-minute production of the negligee by the State, but from the manner and timing of that production by the prosecutor. Although there is no suggestion by defendant that the prosecutor chose to hand the brown bag to defense counsel in plain view of the jury with the conscious intent to undermine defense counsel's cross-examination and corroborate the victim's story, the prosecutor's conduct during defense counsel's cross-examination was nevertheless improper. Immediately before the prosecutor handed defense counsel a brown paper bag containing the negligee, the victim had testified that defendant had brought with him to her apartment "a brown bag with a black negligee inside." When asked whether defendant had taken anything with him when he left her apartment, the victim answered that he left the negligee and that she had turned the negligee over to the police. The prosecutor learned at 10:00 a.m. on the morning of the trial that the police had the negligee. Instead of alerting the defense counsel and the court of his discovery prior to the start of the trial, the prosecutor handed the bag to defense counsel in open court in a manner that risked arousing the jury's suspicion that the bag was, in fact, the very bag brought by defendant to the victim's apartment and that the bag contained the negligee that the victim had given to the police.

Although we are ever conscious of the advantages that the trial court has in assessing the impact that events in the courtroom have on the jury and although the court did not find that the prosecutor's conduct deprived defendant of a fair trial, we are satisfied that justice requires us to vacate defendant's conviction. On our review of the entire record, we are compelled to conclude that by producing a brown paper bag in front of the jury immediately after the victim testified that defendant brought a negligee in a brown bag and at the very moment that the victim testified that she had given the negligee to the police, the prosecutor reinforced the victim's version of the events in a case that turned completely on the relative credibility of the victim and defendant. When as here the likely prejudice to defendant results solely from the courtroom actions of a prosecutor, we would be neglecting our

duty to superintend the conduct of the criminal courts and the prosecutors who practice there if we failed to require a new trial.

The entry is:

Judgment vacated.

ROBERTS, WATHEN and GLASSMAN, JJ., concur.

CLIFFORD, Justice, with whom COLLINS and BRODY, JJ., join, dissenting.

Because in my judgment the trial court did not abuse its discretion in refusing to grant a mistrial, I respectfully dissent.

Mistrials should be granted only sparingly. *State v. Mason*, 528 A.2d 1259, 1260 (Me.1987).

> The trial court should deny a motion for mistrial except in the rare case when the trial cannot proceed to a fair result and no remedy short of a new trial will satisfy the interests of justice.

*Id.* The justice presiding at trial was in a unique position to assess what impact the handing of the bag by the prosecutor to defense counsel had upon the jury, and he concluded that the impact was insufficient to justify a mistrial. We should defer to that assessment. In my judgment, the refusal to grant a mistrial was well within the discretion of the trial justice.

I would affirm the conviction.