STATE of Maine

v.

Charles WARREN.

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 28, 1995.

Decided July 3, 1995.

Norman R. Croteau, Dist. Atty., Kevin J. Regan, Asst. Dist. Atty., Auburn, for State.

Sheila A. Cook, Law Offices of William Maselli, Auburn, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

RUDMAN, Justice.

Charles Warren appeals from a judgment entered in the Superior Court (Androscoggin County, *Saufley, J.*) following a jury trial which found him guilty of gross sexual assault, 17–A M.R.S.A. § 253(1)(B) (Supp. 1994).[1] Contrary to Warren's contentions on appeal, his right to a fair trial was not prejudiced. We affirm the judgment.

In June 1992, the victim, then age thirteen, and her friend skipped school and hitchhiked to Lewiston. After walking around the streets for several hours, the girls encountered the defendant and his friend Charles Beal. They spoke for a time and, at dusk, the girls rode with the defendant and Beal to a park to ride the swings and smoke marijuana. Sometime thereafter, the defendant and the victim went for a short walk together.

The defendant and the victim returned to the defendant's van and both got into the back seat. Once inside, the defendant forced the victim to have sexual intercourse. Although the van was not far in distance from the swings, the victim's friend did not hear her struggling or calling for help. The victim was seated and fully clothed when the victim's friend and Beal returned to the van.

The defendant then drove the girls back to Lewiston. They spent the night at a friend's house. The victim's mother, quite angry at the victim for staying out all night, found the girls the following afternoon. Once learning of the incident, the victim's mother took her to the police station where the victim gave a statement and was later examined by a doctor.

Officer Vaillancourt of the Lewiston Police Department identified the vehicle described by the victim as belonging to the defendant's wife. He and William Harwood, forensic chemist at the Maine State Police Laboratory, searched the van and later performed a chemical analysis on the victim's clothing and items seized from the van. The victim's blood was found on her underpants, her shorts, the shoulder of her jacket, and on a vinyl portion bordering the carpeting in the van between the front and back seats, but there was no trace of semen on any of the victim's clothing or in the van.

This appeal followed Warren's conviction of gross sexual assault.

*The Victim's Friend's Status as a Juvenile Offender on Probation*

■ The defendant complains that it was an abuse of discretion and a denial of his constitutional right to confront his accusers for the court to preclude him from utilizing the victim's knowledge of her friend's involvement with juvenile probation for the purpose of impeaching the victim and her friend. When the evidence, as here, is proffered by a criminal defendant, and the State argues that the admission of the evidence would unfairly prejudice its case, the defendant's constitutional right to confront[2] and cross-examine the witness against him significantly circumscribes the court's discretion to exclude the evidence. *State v. Graves,* 638 A.2d 734, 737 (Me.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 90, 130 L.Ed.2d 41 (1994).

Here, the defense asserted the theory that the thirteen year old victim believed, albeit mistakenly so, that she could be sent to the Youth Center for truancy, and that this belief was corroborated in her mind by the belief that her friend who was on probation could be sent to the Youth Center for her truancy on the day at issue. Because of this belief, the defendant theorized, the victim was motivated to fabricate the offense with which the defendant was charged. The defendant argued that the victim's knowledge of her

---

1. "A person is guilty of gross sexual assault if that person engages in a sexual act with another person and ... [t]he other person, not the actor's spouse, has not in fact attained the age of 14 years." 17–A M.R.S.A. § 253(1)(B).

2. This right, secured by the United States and Maine Constitutions guarantees the opportunity of the accused in a criminal proceeding to be confronted by witnesses against him. U.S. Const. amend. VI; Me. Const. art I, § 6.

friend's probationary status and her knowledge of the potential that her friend would be confined to the Youth Center go "right to the heart" of the victim's need to fabricate.

 A fundamental component of the right to confront one's accuser secures for the criminal defendant the right to cross-examine to explore the motivations of the witness to testify. *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974); *State v. Graves,* 638 A.2d at 738. In this case it was not an abuse of discretion when the court precluded the defendant from utilizing the victim's knowledge of a friend's involvement with juvenile probation for the purpose of impeaching the victim. Prior to proffering the evidence, the defendant had not established, nor did he represent or suggest he could establish, what the victim believed would be the consequence of her unexcused absence from school. The court properly applied the balancing test contained in M.R.Evid. 403 and excluded the evidence of the victim's knowledge of her friend's probationary status. Moreover, through the victim's own testimony, the defendant established the victim knew that her mother had contacted the police to report her missing, and she was also aware that she would be punished by her mother for running away. Thus, by alternative means, the defense was able to establish its theory that the victim was motivated to fabricate the sexual contact with the defendant.

 Because the trial court was never presented with an opportunity to rule on whether the victim's friend could be questioned about her probationary status, we find no merit in the defendant's contention that he was denied the right to cross-examine the victim's friend on that issue. We review for obvious error affecting substantial rights, M.R.Crim.P. 52(b), and on this record, that error was not established. *See Davis,* 415 U.S. at 317–18, 94 S.Ct. at 1110–11 (holding state trial court deprived defendant of his constitutional right to confront when precluded from cross-examining witness as to his probation status; defense sought to establish

that defendant's fear of probation revocation created bias).

*The Defendant's Prior Convictions*

Next, the defendant complains that the admission in evidence of his prior convictions for assault with a dangerous weapon and for armed robbery was erroneous because they have no bearing on his truthfulness. To the contrary, M.R.Evid. 609 explicitly permits the use of any felony crime to impeach the veracity of a witness. M.R.Evid. 609(a); *State v. Hanscome,* 459 A.2d 569, 572 (Me. 1983). The rule implies that anyone convicted of a felony may not be truthful in testimony, and therefore, the crime need not include veracity as an element. M.R.Evid. 609(a) advisors' note & advisors' note to 1990 amend., Field & Murray, *Maine Evidence* 6–45—6–48 (3d ed. 1994). A felony will be admissible to impeach if the judge determines that the probative value of the conviction on the credibility of the witness outweighs any unfair prejudice to the criminal defendant. M.R.Evid. 609(a).

 We are unpersuaded by the defendant's contention that the convictions were inadmissible because they indicated a high degree of similarity to the crime charged. Aggravated assault [3] is significantly different from gross sexual assault. The record amply indicates that the trial court carefully weighed the probative value of admitting the defendant's prior convictions against the prejudicial effect of doing so. Although extreme care should be taken to prevent unnecessary prejudice to a criminal defendant, we cannot say on this record that the trial court committed an abuse of discretion.

*Failure of the State to Disclose HIV Status*

Finally, the defendant claims that his right to a fair trial was prejudiced by the State's failure to disclose evidence tending to create reasonable doubt as to his guilt. After the trial, the defendant discovered, through the presentence investigative report, that the vic-

---

**3.** "A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes ... [s]erious bodily injury to another ... or ... [b]odily injury to another with use of a dangerous weapon...." 17–A M.R.S.A. § 208 (1983).

tim had tested negative for the Human Immunodeficiency Virus (HIV). Although this evidence was available before the trial, the State did not disclose it to him. The defendant had previously tested positive for the virus. The defendant moved pursuant to M.R.Crim.P. 16(d) for a dismissal of the indictment or for a new trial.

 Automatic discovery under M.R.Crim.P. 16(a) compels the attorney for the State to furnish to the defendant any "statement describing any matter or information known to the attorney for the state which may not be known to the defendant and which tends to create a reasonable doubt of the defendant's guilt as to the offense charged." At the motion hearing, the court heard the testimony of Dr. Owen Pickus, an expert in the field of HIV and AIDS. He indicated that there is "no predictability or no predictive value of using an HIV test as a mechanism to determine whether someone had sexual intercourse with someone or not." The trial court opined:

> [A]lthough certain factors may make infection more likely, the doctor could put no statistical number on those factors. Moreover, the risk of infection drops dramatically where there has been no ejaculation.... Assuming a single episode of intercourse, where no condom is used, there is full penetration, and no ejaculation occurs, the doctor's opinion as to what could be concluded from the failure of the initially HIV-free female to test positive after the alleged assault was "absolutely nothing."

Because the trial court could conclude that the HIV test had no predictive value of whether sexual intercourse did occur, the victim's HIV test did not tend "to create a reasonable doubt of the defendant's guilt." M.R.Crim.P. 16(a). Thus, the trial court did not abuse its discretion when it declined to dismiss the indictment or grant a new trial[4] as a sanction for the State's discovery violation. *See State v. Pelletier*, 594 A.2d 1095, 1097 (Me.1991).

The entry is:

Judgment affirmed.

All concurring.

---

4. Likewise, the defendant's claim of entitlement to a new trial must fail. To prevail on a motion for a new trial based on newly discovered evidence, the defendant must show, by convincing evidence (1) that the evidence will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching, unless it is clear that such impeachment would have resulted in a different verdict. *State v. Dechaine*, 630 A.2d 234, 236 (Me.1993). When the evidence the defendant proffered lacked any probative value, the trial court committed no error in finding that he could not establish that the evidence would change the result if a new trial were granted. *See Dechaine*, 630 A.2d at 236.