STATE of Maine

v.

**William RANKIN.**

Supreme Judicial Court of Maine.

Argued May 15, 1995.
Decided Oct. 24, 1995.

---

Geoffrey Rushlau (orally), District Attorney, Rockland, for the State.

Thomas J. Connolly (orally), Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

William Rankin appeals from judgments entered in the Superior Court (Knox County, *Marsano, J.*) following jury verdicts finding him guilty of robbery, 17–A M.R.S.A. § 651 (1983), aggravated assault, *id.* § 208 (1983), and assault, *id.* § 207 (1983 & Supp.1994). Rankin contends that the evidence was insufficient to convict him of robbery, and that the court erred in its response to an alleged discovery violation and in denying his motion for a new trial with respect to the robbery count. We vacate the judgment entered on the robbery conviction.

The evidence at the trial may be summarized as follows. Rankin and William Grant, long-time friends, drank heavily at the Wayfarer East Hotel in Rockland during the evening of April 21, 1993. They became intoxicated and belligerent and left the bar shortly before midnight. Rankin attacked Frank Roscoe, a recently paid fisherman, outside the hotel for no apparent reason, and Roscoe later discovered his wallet was missing. Rankin and Grant proceeded to the Tradewinds Hotel where Karen Olsen, a friend of Rankin, occupied room 122.

Robert Forsberg, who occupied the room just above Olsen's (number 222), was awakened at about 1:30 a.m. when Rankin and Grant knocked on his door. Forsberg answered the door in his underwear. Rankin asked Forsberg who he was, then said "I'm so wasted," and began punching Forsberg in the face. Rankin mistakenly thought he had knocked on Olsen's door and became jealously enraged when he saw a man in his underwear. Forsberg ended up on the floor across the room. He saw his wallet, which had been on a table in the room, fall in front of him. The next morning he realized that the money in his wallet, about twenty dollars, was missing. Forsberg testified that he only saw Rankin enter the room. Forsberg agreed, however, that after the attack began he did not keep track of the second man. When Rankin was arrested he had only a few crumpled one dollar bills in his pocket. Grant, in contrast, had sufficient funds to make bail for himself and Rankin that night.

Rockland Police Officer Michael Murphy responded to the assault on Forsberg. Mur-

phy testified that he interviewed Grant and that Grant was able to recollect what had occurred. When Grant was called as a witness for the State, however, he testified that he had no memory of the evening's events. He only remembered getting drunk at the Wayfarer and waking up the next day with a hangover. He acknowledged, though, that he had pled guilty to offenses occurring that night that included receiving stolen property.

Prior to the trial, Rankin filed a motion for discovery that specifically requested "any notes taken by any police officer during the course of any interview with the co-defendant, William Grant and/or any recordings made." At the close of all the evidence at the trial and prior to closing arguments, the prosecutor revealed that a tape existed of a statement made by Grant to Officer Murphy. The prosecutor stated that he had not listened to the tape, and he declared as follows:

It's my understanding that there is nothing exculpatory with respect to Mr. Rankin. We had provided in discovery—in Officer Murphy's report he indicated he had interviewed Mr. Grant, and that Mr. Grant had said to him that he, Grant, had not gone into Forsberg's room; that he did not take Forsberg's wallet. So I don't believe that technically there has been a violation with respect to the State having exculpatory evidence which has not been provided.

Defense counsel responded as follows:

[I]t just ... came to my attention that these tapes were available. I do not know what the contents of the tapes are. At this time it would seem appropriate to proceed with the matter and then, should the tapes prove to have exculpatory material, file an appropriate motion at that time or request for a mistrial if appropriate....

The question is what in there of—what is in there I don't anticipate to be problematic. The way Mr. Grant testified on the stand, I don't believe his interviews would have changed things. If that becomes—if that is different I'll make the court aware.

The court's only response was to state, "I assume there are not yet copies of the tape," to which the prosecutor responded, "There are not copies." The court then proceeded immediately to take up other matters.

The State argued in its summation that the defense would suggest that it was not Rankin but Grant who took Forsberg's wallet. The State asserted that this argument fails because the evidence showed that "only Mr. Rankin came into the room." As the State predicted, Rankin argued that the question for the jury to decide was "who entered the room and took the money." He admitted that there was sufficient evidence to find him guilty of assault. He nonetheless maintained that he did not commit a robbery, contending that Grant entered, took the wallet, and then tossed it across the room. The jury found Rankin not guilty of the robbery of Roscoe, and guilty of the robbery of Forsberg and the assaults. Judgments were entered on January 25, 1994.

On February 14, 1994, Rankin received a partial tape of the interview with Grant. The interview contains admissions by Grant that he was inside Forsberg's hotel room and that he had physical possession of the wallet. On February 28, 1994, Rankin filed a combined "motion to dismiss, motion for mistrial, motion for new trial" with respect to the robbery count. A hearing on the motion was held on June 1, 1994. At the motion hearing, Rankin argued in the following manner:

[T]his evidence of who was in possession of the wallet is enormously significant.... [T]he issue of whether or not it was Grant that walked over and grabbed the wallet, took the money and threw it across the room, or whether it was Rankin, is the difference between a robbery and not a robbery. There is no discussion of that at all in the discovery, but there was discussion of that ... in the tape that was not provided....

The court took the matter "under advisement," and subsequently denied the motions during a conference call on June 2.

## I.

We first note that there is no merit in Rankin's contention that the evidence was insufficient to convict him of robbery. As we routinely explain, in examining the sufficiency of the evidence, we view the evidence in

the light most favorable to the State to determine whether a trier of fact "rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Barry*, 495 A.2d 825, 826 (Me.1985). A verdict based on circumstantial evidence is no less conclusive than one based on direct evidence. *State v. Crosby*, 456 A.2d 369, 370 (Me.1983). The weight to be given to the evidence and determinations of witness credibility are the exclusive province of the factfinder. *State v. Glover*, 594 A.2d 1086, 1088 (Me.1991).

Pursuant to 17–A M.R.S.A. § 651(1)(D) (1983), "[a] person is guilty of robbery if he commits or attempts to commit theft and at the time of his actions ... [h]e intentionally inflicts or attempts to inflict bodily injury on another...." [1] Here, there was evidence that Rankin went to Forsberg's room and punched him in the face. Forsberg ended up on the floor across the room, and saw his wallet fall in front of him. The next morning he realized that money was missing from his wallet. He testified that he only saw Rankin enter the room. Viewing the evidence in the light most favorable to the State, a trier of fact "rationally could find beyond a reason-

able doubt every element of the offense charged." *Barry*, 495 A.2d at 826.

## II.

■ We find nevertheless that the result of the State's discovery violation must be a new trial. M.R.Crim.P. 33 provides that the court on a motion of the defendant may grant a new trial to the defendant if required in the interest of justice.[2] Courts have appropriately considered issues such as potential juror bias, limitations on the scope of cross-examination, and a number of other issues as the basis of a motion for a new trial. *See, e.g., State v. Thomas*, 432 A.2d 757, 760 (Me.1981); *State v. Terroni*, 270 A.2d 75, 77 (Me.1970). *See also* 1 Cluchey & Seitzinger, *Maine Criminal Practice* § 33.4 at VI–37 (1994); 3 Glassman, *Maine Practice: Rules of Criminal Procedure Annotated* § 33.3 at 272–73 (1967).

■ The trial court is vested with broad discretion by M.R.Crim.P. 16 to resolve alleged discovery violations. When the State fails to comply with discovery requirements, the court has broad discretion to apply an appropriate sanction.[3] *See State v. Flick,*

---

1. Maine's robbery statute, 17–A M.R.S.A. § 651 (1983), reads in full:

   1. A person is guilty of robbery if he commits *or attempts to commit theft* and at the time of his actions:
      **A.** He recklessly inflicts bodily injury on another;
      **B.** He threatens to use force against any person present with the intent
      **(1)** to prevent or overcome resistance to the taking of the property, or to the retention of the property immediately after the taking; or
      **(2)** to compel the person in control of the property to give it up or to engage in other conduct which aids in the taking or carrying away of the property;
      **C.** He uses physical force *on another with* the intent enumerated in paragraph B, subparagraphs (1) or (2);
      **D.** He *intentionally inflicts or attempts to* inflict bodily injury on another; or
      **E.** He or an accomplice to his knowledge is armed with a dangerous weapon in the course of a robbery as defined in paragraphs A through D.
   2. Robbery as defined in subsection 1, paragraphs A and B, is a Class B crime. Robbery as defined in subsection 1, paragraphs C, D, and E, is a Class A Crime.

2. M.R.Crim.P. 33 provides in pertinent part:

   The court on motion of the defendant may grant a new trial to the defendant if required in the interest of justice....
   A motion for a new trial based on any ground other than newly discovered evidence shall be made within 10 days after verdict or finding of guilty or within such further time as the court may fix during the 10–day period. Any motion for a new trial based on the ground of newly discovered evidence may be made only before, or within 2 years after, entry of the judgment in the criminal docket....
   Neither the State nor the court raised a question regarding the timeliness of Rankin's motion. In the circumstances of this case, in which the State did not provide Rankin with a tape of the *police interview with Grant until 20 days after* the entry of the judgment, we find that Rankin's motion was timely filed.

3. M.R.Crim.P. 16(d) provides:

   If the attorney for the State fails to comply with this rule, the court on motion of the defendant or on its own motion may take appropriate action, which may include, but is not limited to, one or more of *the following:* requiring the attorney for the state to comply, granting the defendant additional time or a continuance, *relieving the defendant from* making a disclosure required by Rule 16A,

577 A.2d 1192, 1194 (Me.1990) (citation omitted); *State v. Berkley*, 567 A.2d 915, 919 (Me.1989).

This case is unusual for a number of reasons. The State concedes that the non-disclosure of the tape of Grant's statement to the police was a discovery violation because the summary of the statement given to the defense differed significantly from the tape recording. Although the parties were aware that potentially a violation had occurred when the existence of the tape was made known after each side had rested its case, neither party had actually examined the evidence. We attach special significance, however, to the fact that the prosecutor explicitly assured the court and Rankin that there was no exculpatory material on the tape.

■ As we have often repeated, the scope of our review of a trial court's disposition of a motion for a new trial is very limited. *Binette v. Deane*, 391 A.2d 811, 813 (Me.1978). Here, however, the State committed a discovery violation and failed to inform the court or the defense until the close of all the evidence. The court appeared to acquiesce in Rankin's proposal to review the tape after the verdict

and request a new trial if the tape contained exculpatory material, and then denied the request for a new trial despite its earlier acquiescence. In these unusual circumstances, the interest of justice requires a new trial. *See State v. Pelletier*, 594 A.2d 1095, 1097–98 (Me.1991) (mistrial necessary when likely prejudice to defendant results solely from courtroom actions of prosecutor); *State v. Thurlow*, 414 A.2d 1241, 1244 (Me.1980) (mistrial necessary when a police report withheld by the State was material to establish intent).

The entry is:

Judgments on Counts III and IV affirmed. Judgment on Count II vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

prohibiting the attorney for the state from introducing specified evidence and dismissing charges with prejudice.