2010 ME 60

**STATE of Maine**

v.

**Mark R. GRAHAM.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 27, 2010.

Decided: July 8, 2010.

Clifford B. Strike, Esq., Strike, Goodwin & Obrien, Portland, ME, for Mark R. Graham.

Stephanie Anderson, District Attorney, Meg L. Elam, Dep. Dist. Atty., Portland, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

JABAR, J.

[¶ 1] Mark R. Graham appeals from judgments of conviction of unlawful sexual contact (Class B), 17–A M.R.S. § 255–A(1)(E–1) (2009), and visual sexual aggression against a child (Class C), 17–A M.R.S. § 256(1)(B) (2009), entered in the Unified Criminal Docket (Cumberland County, *Beaudoin, J.*) after a jury trial. In addition to challenging the sufficiency of the evidence to support his convictions, Graham contends that the court erred in denying his motion for a mistrial as a sanction for discovery violations committed by the State. We affirm the judgments.

[¶ 2] Viewing the evidence in the light most favorable to the State, *see State v. Bickart*, 2009 ME 7, ¶ 46, 963 A.2d 183, 195, the jury rationally could have found the following facts beyond a reasonable doubt. On December 29, 2008, the victim, a nine-year-old girl, was visiting her grandmother in Portland. Because the victim's mother was working, she arranged for her boyfriend, Graham, to bring the victim back to her Portland apartment. Graham picked up the victim at approximately 7:30 p.m. and returned to the mother's apartment. At some point during the

evening, Graham exposed and touched his penis in front of the victim, and touched the victim's genitals with his hand. When the victim's mother returned home later that night, the victim told her what had happened. The victim's mother told Graham to leave, and Graham complied.

[¶ 3] The following day, the victim was examined by doctors at the Maine Medical Center and the Spurwink Child Abuse Program (Spurwink). Although a report was generated based on the Spurwink examination, Spurwink never forwarded the report to the police department. Detective Scott Dunham of the Portland Police Department, who was later assigned to the case, did not contact Spurwink to ascertain whether a report had been produced.

[¶ 4] Detective Dunham interviewed the victim on January 2, 2009. Shortly thereafter, Graham was arrested and charged with unlawful sexual contact (Class A), 17–A M.R.S. § 255–A(1)(F–1) (2009); unlawful sexual contact (Class B), 17–A M.R.S. § 255–A(1)(E–1); and visual sexual aggression against a child (Class C), 17–A M.R.S. § 256(1)(B).

[¶ 5] Graham's jury trial began on August 18, 2009. That morning, the Portland Police Department produced photographs of text messages sent by Graham to the victim's mother. Although Graham had received information about the content of the text messages in discovery, it was agreed that the failure to timely produce the actual photographs constituted a discovery violation. As a sanction, the court ruled that the photographs could not be admitted, and instructed the State to "inform [the mother] that she cannot on direct [examination] make any statements referring to photographs of text messages having been taken."

[¶ 6] Later that day, Graham elicited testimony during cross-examination regarding the absence of the Spurwink report. Prompted by this line of questioning, Detective Dunham contacted Spurwink to ascertain the whereabouts of the report. Detective Dunham obtained the Spurwink report and provided copies to both Graham and the State before 9:13 a.m. the next day. The parties agreed that another discovery violation had occurred, but neither the State nor Graham was aware that Spurwink had prepared a written report. Detective Dunham later testified that he had not realized that the report was missing from the police file until Graham's cross-examination. Graham moved for a mistrial, arguing that the late production of the report prejudiced his case.

[¶ 7] The court denied Graham's motion for a mistrial. The court noted that the discovery violations "appear[ed] to be inadvertent," and found that the statements contained in the Spurwink report were not "particularly significant" or had "either been put into evidence or [were] available through other witnesses." The court offered Graham the option to recall witnesses and offered to admit in evidence any portion of the Spurwink report. Ultimately, Graham and the State stipulated to the jury "that a physical exam occurred on December 30th of 2008 of [the victim] at the Spurwink Clinic in Portland. A report was generated as a result of that exam. In part that report read: Physical examination today reveals no evidence of anal or genital trauma." As a sanction against the State, the stipulation did not include the report's qualifying statement: "Of course, the absence of specific physical findings in no way indicates that such abuse could not have occurred." Graham chose not to recall any witnesses.

[¶ 8] Before the case was submitted to the jury, the court granted Graham's motion for a judgment of acquittal as to the charge of unlawful sexual contact (Class

A), 17–A M.R.S. § 255–A(1)(F–1). The jury ultimately found Graham guilty of the remaining charges.[1]

[¶ 9] Contrary to Graham's contentions on appeal, the evidence was sufficient to support his convictions. "We review whether evidence is sufficient to support a conviction by viewing that evidence in the light most favorable to the State to determine whether the fact-finder could rationally have found each essential element of the crime beyond a reasonable doubt." *State v. Bruzzese*, 2009 ME 61, ¶ 10, 974 A.2d 311, 313. Here, the victim's testimony alone was sufficient to support Graham's convictions and was not "inherently improbable, incredible or lacking a measure of common sense." *State v. Philbrick*, 669 A.2d 152, 155 (Me. 1995) (quotation marks omitted); *see also State v. Drewry*, 2008 ME 76, ¶ 32, 946 A.2d 981, 991. Graham's arguments regarding conflicting testimony and the credibility of the victim's mother were clearly issues for the jury to decide. *See State v. Moores*, 2006 ME 139, ¶ 7, 910 A.2d 373, 375.

[¶ 10] Nor are we persuaded that the court abused its discretion in denying Graham's motion for a mistrial. *See State v. Rollins*, 2008 ME 189, ¶ 9, 961 A.2d 546, 549 (reviewing the denial of a motion for a mistrial for an abuse of discretion); *State v. Sargent*, 656 A.2d 1196, 1199 (Me.1995) (reviewing the imposition of sanctions for violating discovery rules for an abuse of discretion). Although it is undisputed that the State violated the automatic discovery provisions of U.C.D.R.P.–Cumberland County 16(a),[2] there is no evidence of prosecutorial bad faith, *see State v. Cochran*, 2000 ME 78, ¶ 28, 749 A.2d 1274, 1281, and Graham failed to establish that the violation caused him prejudice rising to the level of depriving him of a fair trial, *see State v. Bridges*, 2004 ME 102, ¶ 11, 854 A.2d 855, 858. To the extent that the Spurwink report contained exculpatory evidence, the court offered Graham the opportunity to introduce any portion of the report in evidence. Moreover, as the court found, Graham possessed essentially the same information from other documents properly produced during discovery. While we do not minimize the "obvious significance of the interests underlying the mandates of [U.C.D.R.P.-Cumberland County 16]," *State v. Ledger*, 444 A.2d 404, 411 (Me.1982), by imposing an alternative sanction designed to minimize the discovery violation's impact on the trial, the court acted well within its discretion. Indeed, the court's handling of the matter reflects a careful and measured effort to avoid the "extreme sanction" of a mistrial while preserving Graham's right to a fair trial. *See Sargent*, 656 A.2d at 1199.

The entry is:

Judgments affirmed.

---

**1.** For unlawful sexual contact, the court sentenced Graham to six years' incarceration with all but three and one-half years suspended, and three years' probation. For visual sexual aggression against a child, the court imposed a concurrent two-year sentence. Finally, the court revoked Graham's probation for a prior conviction, and activated his seventeen-month sentence, to run consecutively.

**2.** U.C.D.R.P.–Cumberland County 16 is similar to M.R.Crim. P. 16, but was amended to reflect the State's increased discovery obligations. *See* Establishment of the Cumberland County Unified Criminal Docket, Me. Admin. Order JB–08–2 (as amended by A. 2–10) (effective Mar. 1, 2010).