2012 ME 136

**STATE of Maine**

v.

**Zachary R. CARR.**

Supreme Judicial Court of Maine.

Argued: Nov. 8, 2012.

Decided: Dec. 11, 2012.

Hunter J. Tzovarras, Esq. (orally), Bangor, for appellant Zachary R. Carr.

William J. Schneider, Attorney General, and Donald W. Macomber (orally), Asst. Atty. Gen., Augusta, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Zachary R. Carr appeals from a judgment of conviction of intentional or knowing murder, 17–A M.R.S. § 201(1)(A) (2011), and the accompanying sentence, entered in the trial court (*Murphy, J.*) following a jury trial. Carr argues that the court erred in denying him a new trial based on the State's failure to produce exculpatory evidence, the court violated the equal protection right of a juror removed from the panel, there was insufficient evidence to support his conviction,

and the court erred in calculating his sentence. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Viewing the evidence in the light most favorable to the State, the following facts were established at trial. *See State v. Ouellette*, 2012 ME 11, ¶ 3, 37 A.3d 921. On the evening of January 27, 2010, Carr and a group of his friends became involved in a physical altercation with the victim and a group of the victim's friends in Bangor. Carr pulled out a gun he had obtained that day and, while the victim was on the ground and unarmed, shot the victim once in the chest. The victim died the next day.

[¶ 3] Carr pleaded not guilty to a charge of intentional or knowing murder, 17-A M.R.S. § 201(1)(A), and the matter proceeded to trial on February 28, 2011.[1] Witnesses testified on February 28, March 1, March 2, and March 3, 2011. During the proceedings on March 3, the parties learned, for the first time, that a Bangor Police Department detective had an audiotape recording of an interview he conducted with an eyewitness to the crime who had already testified at trial. Carr made no request of the court at that time.

[¶ 4] At the end of the court day on March 3, the jurors were told that, when they returned on the following day, they would hear closing arguments from the attorneys and instructions from the court, and then would begin their deliberations.

Just before 10:00 a.m. on the morning of March 4, Juror # 75 told a court marshal that he could not stay for deliberations that day past 5:08 p.m. due to his religious beliefs. After conferring with counsel, and over the defendant's objection, the court designated Juror # 75 as an alternate. The court released Juror # 75 just before the jury left the courtroom to begin its deliberations at 12:50 p.m. At approximately 4:57 p.m. the jury returned a guilty verdict on the murder charge.[2]

[¶ 5] Carr moved for a new trial on the ground that the State failed to disclose the existence, or provide a copy, of the eyewitness interview recording discovered on the last day of testimony. *See* U.C.D.R.P.—Bangor 33.[3] After conducting a testimonial hearing on the motion, the court made detailed findings explaining the circumstances in which the interview recording was not provided. Based on these findings, the court denied Carr's motion for a new trial.

[¶ 6] On December 2, 2011, the court sentenced Carr to thirty-five years in prison. It first calculated Carr's basic sentence to be thirty years. The court then considered as mitigating factors Carr's age—eighteen years old—at the time of the crime, his immaturity, his "highly dysfunctional" family life, his lack of a prior criminal record, and the presence of some remorse for the crime. The court found as an aggravating factor the amount of suf-

---

1. The jury had been selected over a month earlier, but the court delayed the start of trial after it determined that the State had failed to turn over narratives of interviews with witnesses taken by a Bangor Police Department detective over a year earlier. During that delay, but before the trial began, the State dismissed a charge of adequate provocation manslaughter pursuant to U.C.D.R.P.—Bangor 48(a). *See* 17-A M.R.S. § 203(1)(B) (2011).

2. The jury had also received an instruction regarding the lesser included offense of manslaughter. *See* 17-A M.R.S. § 203(1)(A) (2011).

3. Carr also sought a new trial on other grounds, and moved for a judgment of acquittal, *see* U.C.D.R.P.—Bangor 29(b). He does not challenge the court's denial of the motions on these grounds.

fering sustained by the victim and his family.

[¶ 7] Carr appeals his conviction, and we also granted his petition for review of his sentence pursuant to M.R.App. P. 20(g), (h).

## II. DISCUSSION

[¶ 8] Carr first argues that the court erred in declining to grant him a new trial on the basis of the State's failure to timely disclose the interview recording. We review the denial of a motion for a new trial for clear error or an abuse of discretion, and will only vacate a conviction when the defendant was deprived of a fair trial. *State v. Gould*, 2012 ME 60, ¶ 24, 43 A.3d 952; *State v. Cookson*, 2003 ME 136, ¶ 28, 837 A.2d 101.

[¶ 9] There is no dispute that, upon request of the defendant, the State had a duty to produce the recording to Carr as discovery, that Carr had made a request, and that the State failed to produce the recording. U.C.D.R.P.—Bangor 16(b). *See* M.R.Crim. P. 16(b)(2)(D).[4] When faced with such a discovery violation, a trial court is vested with substantial discretion. *State v. Graham*, 2010 ME 60, ¶ 10, 998 A.2d 339. The court may even grant a defendant a new trial if "required in the interest of justice." U.C.D.R.P.—Bangor 33; *see State v. Rankin*, 666 A.2d 123, 126–27 (Me.1995) (stating that the State's failure to disclose evidence may form an adequate basis for the grant of a new trial pursuant to M.R.Crim. P. 33).

[¶ 10] We are persuaded, however, that Carr did receive a fair trial in this matter. The court's findings—that the withholding of the recording was an unintentional error; that the prosecutor made

"more than diligent" efforts to obtain and disclose all discoverable materials; that the interview summary that was provided to Carr well before trial contained no significant discrepancies from the recording itself; that, due to the timing of the discovery of the recording, the State also did not have the benefit of that evidence in its trial preparation; that the eyewitness's testimony at trial was more beneficial to Carr than the recording would have been; and that, because the eyewitness refused to speak with the State before trial, but did speak with Carr's counsel before trial, Carr was not unfairly surprised by the eyewitness's testimony, and was in fact "somewhat more prepared" for the eyewitness's testimony than the State—are amply supported by the record, and justify the court's conclusion that Carr was not entitled to a new trial. *See Graham*, 2010 ME 60, ¶ 10, 998 A.2d 339 (stating that when the defendant possesses evidence from other sources that essentially establishes the same fact, a discovery sanction may not be necessary); *State v. Robbins*, 1997 ME 21, ¶ 7, 689 A.2d 603 ("[W]e have never stated that M.R.Crim. P. 16 imposes a duty of due diligence in the conduct of police investigations. What we have required is that the State make a diligent inquiry of police agencies whether automatically discoverable information does exist in their files."); *see also State v. Silva*, 2012 ME 120, ¶ 10, 56 A.3d 1230 (concluding that no discovery sanction on the State was necessary given the disclosure of the evidence as soon as it was available; the State's own inability to use that evidence in preparing for trial; the probable inadmissibility of the evidence; and the possibility that the evidence inculpated, rather than exculpated, the defendant).

---

4. Pursuant to the Unified Criminal Docket rules in effect in Cumberland County, statements of witnesses are automatically provided by the State. U.C.D.R.P.—Cumberland County 16(a)(1)(H).

[¶ 11] Next, we review de novo Carr's contention that the court denied Juror # 75 his equal protection right to sit on a jury by making him an alternate given his inability to deliberate past 5:08 p.m. for religious reasons. U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6–A; *State v. Poole*, 2012 ME 92, ¶¶ 5, 8, 46 A.3d 1129 (holding that an equal protection violation may occur when "similarly situated persons are not treated equally under the law" (quotation marks omitted)). Assuming, without deciding, that Carr has standing to assert Juror # 75's rights, we conclude that the juror's equal protection rights were not violated.[5]

[¶ 12] As the court noted, Juror # 75 was made an alternate not for racial or even religious reasons, but because he indicated that he would be unavailable to proceed with the trial past a certain time. The court found that Juror # 75's time constraints could distract him or otherwise impact his decision-making independent from the religious nature of those time constraints; this decision worked to preserve Carr's right to a "free[ ] and unfettered" jury verdict rather than compromise that right. *State v. Fournier*, 554 A.2d 1184, 1188 n. 7 (Me.1989). The decision was also intended to respect Juror # 75's right to practice his own religious customs. Any juror who was not available to deliberate past a certain time would, according to the trial court's reasoning, be treated in precisely the same way, no matter the reason for his unavailability. Thus, the first step of the equal protection analy-

sis yields no disparate treatment, and we need not go on to consider the appropriate level of scrutiny to apply. *See Poole*, 2012 ME 92, ¶ 8, 46 A.3d 1129.

[¶ 13] To the extent Carr has a separate right to challenge the jury composition, it is based on his right to an impartial jury of his peers. *See* Me. Const. art. I, § 6; *Powers v. Ohio*, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). The trial court routinely manages the availability of jurors against the needs of the trial and the defendant's rights, however, and we review such decisions only for an abuse of discretion. *State v. Larrivee*, 563 A.2d 1104, 1105 (Me. 1989); *see* 15 M.R.S. § 1258 (2011) ("Whenever by reason of the prospective length of a criminal trial the court in its discretion shall deem it advisable," the trial court can impanel alternate jurors who can be called upon to replace jurors who, "prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties."); *State v. Rollins*, 2008 ME 189, ¶¶ 10–14, 961 A.2d 546 (affirming the trial court's decision not to excuse a juror); *State v. Landry*, 485 A.2d 218, 219–20 (Me.1984) (affirming the trial court's refusal to dismiss a juror). There was no such abuse here.

[¶ 14] Finally, we discern no error in the court's entry of the judgment of conviction or its sentencing analysis. There was ample evidence presented at trial on which a reasonable jury could find,

---

5. Carr relies on *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), to argue that he does have standing. In *Powers*, the defendant was convicted after a trial in which the prosecutor used seven of ten peremptory challenges to remove black prospective jurors. 499 U.S. at 403, 111 S.Ct. 1364. The United States Supreme Court held that the defendant was permitted to assert the equal protection rights of those black jurors

because such discriminatory jury selection procedures "cast[ ] doubt on the integrity of the judicial process" on which the defendant intimately relies in being tried for a crime. *Id.* at 402, 410–16, 111 S.Ct. 1364 (quotation marks omitted). Unlike in *Powers*, however, Carr's case does not involve peremptory challenges, jury selection, racial considerations, intentional discrimination, or pretrial procedures.

beyond a reasonable doubt, both that the State disproved Carr's assertion that he acted in self-defense, *see* 17–A M.R.S. § 108(2) (2011); *Ouellette,* 2012 ME 11, ¶ 17, 37 A.3d 921, and that Carr committed each element of intentional or knowing murder, *see* 17–A M.R.S. § 201(1)(A); *State v. Gurney,* 2012 ME 14, ¶ 1 n. 1, 36 A.3d 893. The court also undertook a thoughtful and appropriate sentencing analysis pursuant to the procedure established in 17–A M.R.S. § 1252–C(1), (2) (2011). It correctly considered Carr's use of a firearm in calculating the basic sentence, and factored in the relevant aggravating and mitigating factors. *See State v. Koehler,* 2012 ME 93, ¶ 33, 46 A.3d 1134; *State v. Waterman,* 2010 ME 45, ¶¶ 25 & n. 1, 44–45, 995 A.2d 243; *State v. Schofield,* 2006 ME 101, ¶ 15, 904 A.2d 409; *Cookson,* 2003 ME 136, ¶¶ 41–42, 837 A.2d 101.

The entry is:

Judgment affirmed.